## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

JOSEPH PIACENTINI,

        Plaintiff,

           v.

BIMBO FOODS BAKERIES DISTRIBUTION, LLC, EDWARD GIACOMAZZO,

        Defendants.

Case No. 3:17-cv-00386

## MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION TO VACATE ARBITRATOR'S AWARD AND ALSO IN SUPPORT OF BFBD'S CROSS-PETITION TO CONFIRM ARBITRATOR'S AWARD

# TABLE OF CONTENTS

**Page**

I.    BACKGROUND ....................................................................................................... 1

    A.    Factual Background ...................................................................................... 1

    B.    Procedural Background.................................................................................. 4

II.   ARGUMENT .......................................................................................................... 9

    A.    There Is No Basis in Law or Fact Supporting Plaintiff's Twice-Rejected
         Argument That He Is Entitled to Lost Profits ...................................................... 10

    B.    Plaintiff Has Failed to Satisfy the Standard to Vacate......................................... 14

    C.    Pursuant to Section 9 of the Federal Arbitration Act, the Court should
         confirm the arbitration award.............................................................................. 17

    D.    The Court Should Impose Sanctions for BFBD's Attorneys' Fees Pursuant
         to 28 U.S.C. § 1927 or, Alternatively, Rule 11, for Unreasonable and
         Vexatious Conduct in Increasing Litigation Fees ............................................... 19

III.  CONCLUSION....................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

C<span>ASES</span>

*AFSCME, Council 4, Local 2663 v. Dep't. of Children & Families,*
117 A.3d 470 (Conn. 2015) ........................................................................................11

*Amityville Mobile Home Civic Ass'n v. Town of Babylon,*
No. 14-CV-2369, 2015 WL 1412655 (E.D.N.Y. Mar. 26, 2015) ............................23

*Banus v. Citigroup Glob. Markets, Inc.,*
757 F. Supp. 2d 394 (S.D.N.Y. 2010) ......................................................................21

*Baumgardner v. Bimbo Foods Bakeries Distrib. Inc.,*
697 F. Supp. 2d 801 (N.D. Ohio 2010) ....................................................................12

*Carr v. Wal-Mart Stores, Inc.,*
No. 10-6176, 2011 WL 939168 (W.D.N.Y. Mar. 16, 2011) ...................................13

*Comprehensive Orthopedics & Musculoskeletal Care, LLC v. Axtmayer,*
980 A.2d 297 (Conn. 2009) ......................................................................................11

*First Interregional Equity Corp. v. Haughton,*
842 F. Supp. 105 (S.D.N.Y. 1994) ...........................................................................16

*Guerrero v. FJC Sec. Servs. Inc.,*
No. 12-cv-5763, 2013 WL 5273795 (S.D.N.Y. Sept. 18, 2013) .............................16

*Harty v. Cantor Fitzgerald & Co.,*
881 A.2d 139 (Conn. 2005) ......................................................................................12

*Hayden v. Cisco Sys., Inc.,*
No. 12-00464, 2014 WL 4364900 (D. Conn. Sept. 2, 2014) ...................................18

*In re 60 E. 80th St. Equities, Inc.,*
218 F.3d 109 (2d Cir. 2000) ......................................................................................20

*Pentagen Techs. Int'l Ltd. v. United States,*
63 F. App'x 548 (2d Cir. 2003) .................................................................................20

*Phillips v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
No. 3:05-1959, 2006 WL 3746692 (D. Conn. Dec. 15, 2006) .................................19

*Refino v. Feuer Transp., Inc.,*
480 F. Supp. 562 (S.D.N.Y. 1979), *aff'd*, 633 F.2d 205 (2d Cir. 1980) ..................17

# TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Revellino & Byczek, LLP v. Port Auth. of N.Y. & New Jersey (PANYNJ)*,
No. 16-980, 2017 WL 1016841 (2d Cir. Mar. 15, 2017)........................................................22

*Strassle v. Bimbo Foods Bakers Distrib. Inc.*,
No. 12-3313, 2012 WL 1007289 (D.N.J. Mar. 13, 2013) ....................................................12

*Troche v. Bimbo Foods Bakeries Distrib., Inc.*,
No. 3:11-cv-234, 2016 WL 5417203 (W.D.N.C. Sept. 27, 2016)...........................................12

*Tucker v. Am. Bldg. Maint.*,
451 F. Supp. 2d 591 (S.D.N.Y. 2006)....................................................................................15

*United Bhd. of Carpenters & Joiners of Am. V. Tappan Zee Contractors, LLC*,
804 F.3d 270 (2d Cir. 2015)...................................................................................................11

*United States v. Gershon*,
No. 3:15-CV-01354, 2016 WL 7115930 (D. Conn. Dec. 6, 2016) ........................................23

*Wallace v. Buttar*,
378 F.3d 182 (2d Cir. 2004)..............................................................................................14, 15

*Watkins v. Watkins*,
96 A.3d 1264 (Conn. App. 2014) ...........................................................................................11

STATUTES

9 U.S.C.A. § 10..................................................................................................................15, 17

28 U.S.C. § 1927............................................................................................................. passim

9 U.S.C. § 1...............................................................................................................................17

OTHER AUTHORITIES

Fed. R. Civ. P. 11 .............................................................................1, 10, 19, 20, 22, 23

Bimbo Foods Bakeries Distribution, LLC ("BFBD") respectfully submits this Memorandum of Law in support of its Opposition to Plaintiff's Motion to Vacate Arbitrator's Award and Cross-Petition to Confirm the Arbitrator's Award. The arbitrator issued his award on February 17, 2017, and expressly found that "[l]ost profits are excluded as an award per the agreements among the parties." Ex. A, at 2 ("Award"). When Plaintiff moved for the arbitrator to reconsider this decision, the arbitrator affirmed the decision to preclude lost profits and further explained his reasoning, based on the express language of the contracts. Ex. B ("Clarification of Decision"). Plaintiff's Petition does not challenge the large majority of the Arbitrator's well-reasoned award, arguing only that the Arbitrator could have and should have awarded lost profits.

Despite the clear decision in the Award and Clarification of Decision, Plaintiff's current motion repeats without any legitimate legal basis his twice-rejected argument that he should somehow be entitled to lost profits, contrary to the clear and plain language of his distribution agreement. The Court should reject Plaintiff's attempt to re-litigate this baseless argument and instead confirm the arbitrator's award. Moreover, the Court should impose sanctions in the form of BFBD's attorneys' fees incurred in responding to Plaintiffs' Petition pursuant to 28 U.S.C. § 1927 for Plaintiff's vexatious increase of cost of litigation without legitimate support for his arguments. Alternatively, the Court could *sua sponte* order Plaintiff and/or his counsel to demonstrate why they have not violated Federal Rule of Civil Procedure 11(b) and then award such sanctions pursuant to Rule 11(c)(3) if appropriate.

## I. <u>BACKGROUND</u>

### A. **Factual Background**

Plaintiff is an independent contractor (also known as an "Independent Operator" or "IO") who purchased the exclusive rights to sell certain BFBD food products to customers in varying

locations in a specified geographic area and then entered into a Distribution Agreement dated

September 20, 2004 between himself and George Weston Bakeries Distribution, Inc.

("GWBD").  *See* Ex. C ("Distribution Agreement"). In or about 2009, GWBD changed its name

to BFBD.  The parties later amended the Distribution Agreement on June 24, 2013 to include

dispute resolution procedures.  *See* Ex. D ("Amendment").  This Amendment was made in

connection with the settlement of a lawsuit in exchange for substantial consideration.  The

Amendment did not increase any of the remedies available under the Distribution Agreement.

Rather, it expressly stated that the parties would only be entitled to the "remedies that would be

available to such party if the Covered Claim had been filed in a court of competent jurisdiction."

Ex. D, at § 1.6.  Due to the plain language of the limitation of remedies in the Distribution

Agreement, such remedies would not include lost profits.  *See* Ex. C, at § 11.12

("Notwithstanding anything to the contrary contained in this Agreement, in no event shall either

party be liable to the other for any consequential, incidental, indirect or special damages,

including lost profits and punitive damages").

The instant dispute arose in connection with the sale of the distribution rights to the

Bridgeport Correctional Center ("BCC").   On November 15, 2010, BFBD sold distribution

rights to the BCC to another IO, Edward Giacomazzo, who then began to sell products to the

BCC and has done so ever since.  *See* Ex. E ("Giacomazzo Bill of Sale").  The Schedule A Stop

List and Financing Worksheet attached to the Giacomazzo Bill of Sale expressly included the

BCC.  *See id.* at 3-5 (reflecting that Mr. Giacomazzo paid $47,722 for the rights to the BCC).

Also on November 15, 2010, BFBD sold the distribution rights to the area that enveloped the

BCC – but not including the BCC – to another IO, John Balzi.  *See* Ex. F ("Balzi Bill of Sale").

The Stop List attached to the Balzi Bill of Sale does not include the BCC location as a stop, but

2

the sales area described in Schedule A inadvertently failed to exclude the BCC as an express exception.  *See id.* at 8-9.  However, as understood by all parties to the transaction and as reflected by the Stop List, Mr. Balzi did not own those rights (which separately were sold to Mr. Giacomazzo the same day) and thus Mr. Balzi never sold or even attempted to sell products to the BCC.

On July 4, 2011, Mr. Balzi sold his distribution rights to Plaintiff.  *See* Ex. G ("Piacentini Bill of Sale").  Due to the mistaken absence of the "exception" for the BCC in the original Balzi transaction, the same absence of an "exception" carried over to the paperwork for this transaction.  However, the BCC distribution rights again were not included in calculating the purchase price, as expected since Mr. Balzi's distribution rights did not include the BCC and instead Mr. Giacomazzo had purchased those rights and had been selling to the BCC.  The Financing Worksheet and Stop List make clear that Plaintiff's purchase did not include the BCC rights.  *See id.* at 5-7.  Moreover, Plaintiff had actual knowledge that another IO, Mr. Giacomazzo, was selling products to the BCC throughout the four years following the 2011 transaction.

For the next four years, all parties understood that Mr. Giacomazzo paid for and owned the rights to sell products to the BCC, evidenced by Mr. Giacomazzo selling products to the BCC and Plaintiff not raising any concerns regarding the BCC sales.  When the mistake was discovered, BFBD was transparent and revealed it to Mr. Piacentini, seeking his cooperation in simply cleaning up the paperwork and even offering multiple times to make a nominal payment to him in light of the error as consideration for him to sign corrected paperwork.  Not satisfied with this found money, Mr. Piacentini ran straight to a lawyer and filed a lawsuit in a bad-faith attempt to leverage a mere clerical error as his perceived lottery ticket to demand tens of

thousands of dollars in lost profits from sales to the BCC (which are barred by his Distribution Agreement in any event).  On the threat of a motion to compel arbitration by BFBD and to seek damages under the liquidated damages clause of the Distribution Agreement, Mr. Piacentini dismissed his initial lawsuit and commenced an arbitration proceeding.

      **B.**     **Procedural Background**

On March 21, 2016, Plaintiff filed a demand for arbitration claiming that he, rather than Mr. Giacomazzo, was the true owner of the BCC distribution rights and that he should be paid all profits from the BCC location over the previous five years.  *See* Ex. H ("Demand for Arbitration").  BFBD filed its letter brief in support of its motion to dismiss, or, in the alternative, for summary judgment on September 26, 2016. *See* Ex. I ("BFBD's Letter Supporting Dismissal or Summary Judgment").  BFBD's letter recounted the factual history and explained that Plaintiff was not entitled to lost profits because:  (1) the mere clerical error upon which Plaintiff's claim was premised was a "mutual mistake" of both parties, subject to reformation of the contract to reflect the real agreement of the parties; (2) Plaintiff waived his claim by sitting on any alleged rights for four years during which time Plaintiff was aware that Mr. Giacomazzo was selling products to the BCC; and (3) even in the event that the arbitrator were to reject the previous two arguments, pursuant to the express language of the Distribution Agreement, no party is permitted to recover lost profit damages.  *Id.* at 5-9.

Plaintiff subsequently submitted his Objection to BFBD's Motion for Summary Judgment on October 26, 2016, arguing again that these three reasons were inapplicable to deny Plaintiff lost profits.  *See* Ex. J ("Claimant's Objection to Motion for Summary Judgment").  In particular, Plaintiff again alleged that the Amendment – despite its limited language specific to arbitration – somehow changed the Distribution Agreement's remedies provision.  *Id.* at 7. Plaintiff did not cite any legal authority supporting his interpretation of the interplay between the

contracts or in any way distinguish the facts of this case from the cases cited by BFBD in support of its motion – many of which were interpreting the same plan language as at issue here.

BFBD submitted its Reply in Further Support of Its Motion to Dismiss, or, in the Alternative, for Summary Judgment on October 31, 2016, focusing on Plaintiff's unfounded claim that he was entitled to lost profits and citing multiple court decisions that have construed the exact same contractual terms to preclude lost profits. BFBD further demonstrated that the Amendment language does not indicate that it is modifying or superseding the existing provisions of the Distribution Agreement outside of the dispute resolution procedure. *See* Ex. K ("BFBD's Reply Brief").

BFBD filed its Prehearing Submission on January 4, 2017, recounting the above time line of factual events and arguing that Plaintiff's pursuit of lost profits was not cognizable because not only was BFBD able to assert the defenses of unilateral mistake, mutual mistake, and/or waiver, but also because the clear and plain terms of the Distribution Agreement itself barred recovery of lost profits. *See* Ex. L ("BFBD's Arbitration Brief"). Plaintiff also filed his prehearing Arbitration Brief on January 4, 2017, in which he continued to urge that lost profits were recoverable, alleging now that "[t]he arbitration provision specifically allows lost profits." *See* Ex. M at 7 ("Claimant's Arbitration Brief"). Plaintiff's prehearing submission only sought damages in the form of "lost profits," and did not move for any other form of damages or fees. *Id.* In other words, there was no dispute that Plaintiff's monetary demand was only for lost profits (barred by the agreement).

Following the evidentiary hearing on January 12 and 13, 2017, the parties submitted their post-hearing briefs. S*ee* Ex. N ("Claimant's Claims for Relief"); Ex. O ("BFBD's Remedies Submission"). Plaintiff's post-hearing brief reiterated his argument that because the BCC was

never expressly excluded by BFBD, he was entitled to damages in the form of lost profits.  Ex. N

("Claimant's Claims for Relief").  BFBD's post-hearing submission submitted that the proper

remedy would be to reform the contracts to reflect the parties' intention to exclude the BCC from

Piacentini's stop list, and that under the Distribution Agreement, neither party was entitled to lost

profits.  Ex. O ("BFBD's Remedies Submission").

Upon review of all of the evidence, arguments, and briefs, the arbitrator rendered his

decision on February 17, 2017.  *See* Ex. A ("Award").  The arbitrator properly found that the

right to service the BCC was sold to Mr. Giacomazzo on November 15, 2010 and that a mutual

mistake was made in not specifically identifying the BCC as an excluded "stop" or customer in

the sale paperwork.  *Id.* at 2.  The intent of the parties to exclude the BCC as a "stop" was

supported by the evidence indicating that Mr. Balzi never paid for such distribution rights and

while the BCC was not listed as a "stop" on his Stop List, the BCC was clearly identified on Mr.

Giacomazzo's contract, executed the very same day.  Therefore, the arbitrator agreed that when

Mr. Balzi sold his rights to Plaintiff, Mr. Balzi had no rights to the BCC and therefore could not

convey such rights.  *Id.*

The arbitrator found that this conclusion was reinforced by Plaintiff's own conduct and

statements: "While Piacentini now claims he assumed BCC was his customer, his past conduct

does not comport with such a right" because "for almost 4 years Piacentini never asserted such a

right."  *Id.*  Moreover, "Piacentini also testified that he did not believe he had the rights to BCC

until 2015," which was "contradicted in his interrogatory response."  *Id.*  Instead, Plaintiff was

keenly aware that BFBD had sold the rights to the BCC to another IO – Mr. Giacomazzo –

because not only did he not pay for such rights in his agreement, but he never even attempted to

sell products to the BCC or make any indication that he intended to assert such rights.  Thus, the

arbitrator properly found that the failure to expressly exclude the BCC as a stop on Plaintiff's Stop List was a mere mutual mistake, easily corrected through the doctrine of reformation to properly reflect the contract as the parties intended.

In determining whether damages should be awarded to either party, the arbitrator correctly found that "[l]ost profits are excluded as an award per the agreements among the parties," so no lost profits were awarded to Mr. Giacomazzo or to Plaintiff. *Id.* (citing Ex. C, at § 11.12 ("Distribution Agreement")). Thus, neither BFBD nor Plaintiff was able to recover any lost profits. As confirmed above, lost profits were the only damages that Plaintiff had sought in his pre-hearing and post-hearing briefs. Lastly, while the arbitrator did require BFBD to pay all arbitrator fees and administrative costs of filing with the American Arbitration Association ("AAA"), all attorneys' fees incurred by the parties were left to the respective parties to pay themselves. *Id.* at 3.

Despite the comprehensive consideration on this issue contained in the parties' summary judgment briefing, pre-hearing briefing, hearing arguments, and post-hearing briefing, Plaintiff nonetheless filed a Motion for Reconsideration on February 28, 2017. *See* Ex. P ("Motion for Reconsideration"). Plaintiff's Motion for Reconsideration argued that the arbitrator's refusal to award lost profits was "erroneously" decided because the arbitrator allegedly failed to consider the language of the Amendment and solely relied on the language in the Distribution Agreement. *Id.* at 2. Plaintiff recycled the same, unsupported argument that the Amendment somehow allows for lost profits – despite the complete lack of evidentiary support or legal authority support for such a contention. *Id.* at 2-3. BFBD then submitted a response on March 1, 2017, which was construed as an objection to the Motion for Reconsideration, explaining that there was no AAA rule that even permitted such a motion by Plaintiff, and even if such a procedure

were available, Plaintiff's argument concerning lost profits had already been fully briefed and decided by the arbitrator based on the clear and unambiguous contractual language. *See* Ex. Q ("BFBD Objection to Motion for Reconsideration").  Additionally, given the history of litigating this particular issue, BFBD stated that if it were compelled to continue to respond to Plaintiff's attempts to brief the same issues again, "it reserves all right to request sanctions against Mr. Piacentini and/or his counsel." *Id.*

After considering the Motion for Reconsideration and related Objection, the arbitrator issued a Clarification of Decision on March 3, 2017. *See* Ex. B ("Clarification of Decision"). The Clarification of Decision affirmed the decision to rely on both the Distribution Agreement and the Amendment, and while the original decision did not specifically reference the Amendment, that did not change the Award. *Id.* at 2.  Rather, "the Award which did not award lost profits, was not just based on Section 11.12 of the 9/20/04 Distribution Agreement.  The later Amendment . . . was considered also, along with all the evidence presented." *Id.*  Thus, the arbitrator affirmed the decision to preclude lost profits and expressly refuted Plaintiff's contention that his original decision had failed to consider the Amendment.

In sum, at this time Plaintiff has argued without any legal authority that he is entitled to lost profits on four separate occasions – (1) Objection to Motion for Summary Judgment (Oct. 26, 2016) ("The damages clause the Respondent cites in its position paper is the damages clause from the distribution agreement when there was no arbitration clause.  The arbitration provision specifically allows lost profits."), (2) Arbitration brief (Jan. 4, 2017) ("The damages allowed by the arbitrator are spelled out in the Arbitration provision of the distribution agreement.  The arbitration provision specifically allows lost profits."), (3) post-hearing Claims for Relief brief (Jan. 26. 2017) ("The Claimant, Joseph Piacentini, requests . . . Lost Revenue for outlets which

are in the Claimants [sic] exclusive sales area but are being serviced by Ed Giacomazzo."), and (4) Motion for Reconsideration (Feb. 28, 2017) ("The damages clause the arbitrator cites . . . is the damages clause from the distribution agreement when there was no arbitration agreement and prior to the subsequent amendment of the distribution agreement . . . .  The arbitration provision for remedies allows lost profits.").  *See* Exs. J, M, N, P.  After considering all four submissions, the arbitrator precluded lost profits and did so specifically with the language of both the Amendment and Distribution Agreement in mind.  This is now the *fifth* time Plaintiff has briefed this issue and each time without legal authority.  Neither the Court nor BFBD should have been burdened with the time and expenses of litigating this same argument yet again.

## II.   ARGUMENT

The Court should not allow Plaintiff to continue to repackage rejected arguments. Instead, for several reasons, the Court should reject Plaintiff's Motion to Vacate, confirm the arbitrator's award, and impose sanctions.

First, Plaintiff's stale argument that he is somehow – despite a complete lack of any evidentiary or legal support – entitled to lost profits has been raised, briefed, argued, and clearly rejected multiple times.  The arbitrator's repeated refusal to grant lost profits is based on a clear and unambiguous reading of the amended agreement at issue and there is no support for any alternative reading.

Second, under these circumstances, Plaintiff has failed to satisfy the Federal Arbitration Act's ("FAA") strict standard for vacating an arbitration award, which his filing fails to even acknowledge.  Plaintiff's brief fails to present evidence or a single supporting authority that rises to this standard.  Instead, Plaintiff cuts and pastes his previous briefs, trying to repackage them as a Motion to Vacate.  The FAA standard requires far more than a mere recitation of rejected, baseless arguments and, accordingly, Plaintiff's Motion to Vacate fails.

Third, the Court should award attorneys' fees pursuant to 28 U.S.C. § 1927 for Plaintiff's abuse of procedural tools and needlessly driving up the cost of litigation. Plaintiff was on notice of the possibility of such sanctions in response to his frivolous motion for reconsideration directed to the arbitrator when BFBD stated in its objection to the Motion to Reconsider that if Plaintiff forced BFBD to undergo the expense of addressing these same arguments "once again, [BFBD] reserves all right to request sanctions against Mr. Piacentini and/or his counsel." Ex. Q. Alternatively, the Court would be well within its authority to award sanctions under Federal Rule 11, as discussed below.

### A. There Is No Basis in Law or Fact Supporting Plaintiff's Twice-Rejected Argument That He Is Entitled to Lost Profits.

The Court should reject Plaintiff's transparent attempt to repackage his twice-rejected argument that – despite a total lack of support in either the contractual language or case law – he is somehow entitled to lost profits. Plaintiff again argues that Section 1.6 of "[t]he arbitration provision for remedies allows lost profits" and that the arbitrator "failed to abide by the arbitration agreement . . . [by finding] that he did not have authority to award lost profits when in fact the arbitration agreement allowed such an award." *See* Mot. to Vacate, ¶¶ 11-12. However, paragraphs 11 and 12 of Plaintiff's Motion to Vacate lift practically verbatim Plaintiff's already-rejected arguments contained in his Motion for Reconsideration and prior briefing to the arbitrator.

Thus, the arbitrator has already reviewed and ruled on this issue, both in the initial Award and a second time in the Clarification of Decision, which expressly stated that "both sets of documents [the Distribution Agreement and the Amendment] were reviewed at the time of the initial decision," and while "the initial decision only references Section 11.12 [of the Distribution Agreement], . . . [t]he failure to reference the Amendment does not change the Award." Ex. B,

at 1-2 (citation omitted).  Accordingly, Plaintiff's argument that the decision was "based on the arbitrator ignoring the arbitration agreement" is patently false and contrary to the arbitrator's express statements contained in the Clarification of Decision.

Plaintiff's recovery was correctly limited by the express damage exclusion provision in the Distribution Agreement for several reasons.  First, an arbitrator's award of damages must comport with the express language in the contract.  *See AFSCME, Council 4, Local 2663 v. Dep't. of Children & Families*, 117 A.3d 470, 480 (Conn. 2015) ("[T]he arbitrator's award . . . must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice."); *Comprehensive Orthopedics & Musculoskeletal Care, LLC v. Axtmayer*, 980 A.2d 297, 303 (Conn. 2009) (affirming arbitrator's decision not to award attorneys' fees based on language of agreement); *United Bhd. of Carpenters & Joiners of Am. V. Tappan Zee Contractors, LLC*, 804 F.3d 270, 274 (2d Cir. 2015) ("[C]ourts must rigorously enforce arbitration agreements according to their terms . . . . We will not reverse an arbitral award that draws its essence from the agreement, even if it contains factual errors or erroneous interpretations of contract provisions." (citations omitted)).  This is because, "[w]here the language of the [writing] is clear and unambiguous, the [writing] is to be given effect according to its terms." *Watkins v. Watkins*, 96 A.3d 1264, 1268 (Conn. App. 2014) (citation omitted).

Second, where an arbitrator's award is precluded by the terms of the contract, the arbitration decision should be vacated.  *AFSCME, Council 4, Local 2663*, 117 A.3d at 478-84 (holding trials court's vacatur of the arbitrator's award to be improper since "the award drew its essence from the [contract provision]"); *Comprehensive Orthopedics & Musculoskeletal Care, LLC*, 980 A.2d at 304 (stating that an arbitrator's award may be overturned where the award does "not conform to the submission's express prohibition as to those types of damages awards");

11

*Harty v. Cantor Fitzgerald & Co.*, 881 A.2d 139, 142 (Conn. 2005) (vacating an award where the arbitrator expressly lacked the authority to award attorneys' fees because they were precluded by the parties' agreement).  Thus, the arbitrator correctly stayed within the confines of the clear and unambiguous language of the Distribution Agreement, as amended, in his decision to reject Plaintiff's claim for lost profits.

Third, courts honor contractual language limiting available remedies where the language of the agreement expressly makes such limitation clear.  Here, Section 11.12 of the Distribution Agreement clearly states:

> **<u>DAMAGES</u>**:  ***Notwithstanding anything to the contrary contained in this Agreement***, **in no event shall either party be liable to the other for any consequential, incidental, indirect or special damages, including *lost profits* and punitive damages.**

Ex. C (emphasis added).  Thus, the Distribution Agreement unambiguously precludes *both parties* from recovering any damages for "lost profits."

Where courts have considered ***the same contractual language*** from virtually identical contracts limiting the availability of certain damages, they have reached the same conclusion as the arbitrator in following the agreed-upon contractual language.  *See Troche v. Bimbo Foods Bakeries Distrib., Inc.*, No. 3:11-cv-234, 2016 WL 5417203, at *3-4 (W.D.N.C. Sept. 27, 2016) (holding that an identical contract provision excluding recovery of lost profits "unambiguously precludes" plaintiff's claims for lost profits resulting from defendant's breach of contract); *Strassle v. Bimbo Foods Bakers Distrib. Inc.*, No. 12-3313, 2012 WL 1007289, at *7 (D.N.J. Mar. 13, 2013) (granting BFBD's motion to strike plaintiffs' requests for certain lost profits because such recovery was barred under section 11.12 of the parties' agreement); *Baumgardner v. Bimbo Foods Bakeries Distrib. Inc.*, 697 F. Supp. 2d 801, 819 (N.D. Ohio 2010) (dismissing claim for punitive damages against BFBD because the "contract between the parties expressly

precludes the recovery of punitive damages"); *Carr v. Wal-Mart Stores, Inc.*, No. 10-6176, 2011 WL 939168, at *5 (W.D.N.Y. Mar. 16, 2011) (dismissing breach-of-contract claim against BFBD because plaintiff cannot recover the only damages sought where the agreement between the parties "clearly states that 'lost profits' cannot be recovered").

Plaintiff's Motion to Vacate defiantly fails to even attempt to distinguish or undermine the reasoning of any of the authority cited by BFBD in its multiple briefs to the arbitrator on this very issue, or present any argument or legal authority for why the arbitrator's express explanation of his decision in the Clarification of Decision is not supported by law.  Plaintiff does not claim that he did not understand the Distribution Agreement, including its limitation on damages.  Nor does Plaintiff assert that the limitation is in any way unconscionable or unenforceable.  Instead, Plaintiff hinges his argument on the same twice-rejected claim that a paragraph of the Amendment – which was for the narrow purpose of supplementing a new dispute resolution procedure to the existing Distribution Agreement – somehow altered the remedies under the Distribution Agreement, despite the lack of such intent in the Amendment and an express statement to the contrary within the Distribution Agreement.

Section 1.6 of the Amendment *reinforces* the remedies available under the Distribution Agreement, providing that "the arbitrator is authorized to award any party the full remedies that would be available to such party if the Covered Claim had been filed in a court of competent jurisdiction."  Ex. D.  Applying this Amendment to the Distribution Agreement terms, the "remedies" available in court expressly precluded lost profits pursuant to Section 11.12 of the Distribution Agreement.  Ex. C.  The Distribution Agreement even contemplates such potential amendments, ***stating that its limitation on damages (including the bar on an award of lost profits) applies "[n]otwithstanding anything to the contrary contained in this Agreement."***  *Id.*

13

Thus, to the extent that the language in the Amendment could be deemed inconsistent with Section 11.12 of the Distribution Agreement – which it is not – Section 11.12 was drafted to specifically trump anything to the contrary.  Accordingly, the Amendment did not change the relief available to Plaintiff under the Distribution Agreement by virtue of merely adding a distribute resolution procedure.

In sum, Plaintiff's allegation that the arbitrator's decision did not consider the impact of the Amendment on the remedies available under the Distribution Agreement is false given that it ignores the express statement of the arbitrator to the contrary in the Clarification of Decision. The arbitrator reviewed both the Distribution Agreement and the Amendment and was guided by the express language of these contracts – as required under Connecticut law – in his determination that lost damages are not available under the clear and plain language of the Distribution Agreement.  Thus, Plaintiff's contention that he is somehow entitled to damages expressly precluded by his contract has been raised, considered, and rejected by the arbitrator *twice*.  This Court should reject Plaintiff's attempt to re-litigate this twice-decided issue and confirm the arbitration decision.

### B.      Plaintiff Has Failed to Satisfy the Standard to Vacate.

The FAA sets forth certain grounds upon which a federal court may vacate an arbitration award, all of which "involve corruption, fraud, or some other impropriety on the part of the arbitrators."  *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004 (citation omitted)).  They include:  (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators

exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.  9 U.S.C.A. § 10.

Outside of these specifically enumerated reasons, the Second Circuit has recognized that an arbitral award may be vacated due to a "manifest disregard of the law," but only if "a reviewing court . . . find[s] both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case."  *Wallace*, 378 F.3d at 189 (citation omitted).

Plaintiff fails to satisfy the FAA standard for vacation of an arbitration award.  There is no claim here that the Award was procured by corruption, partiality, or misconduct.  Plaintiff makes no claim that the arbitrator violated any governing legal principle or that the arbitrator's decision lacked finality due to an imperfect execution.  Instead, Plaintiff's motion is akin to a second motion for reconsideration, raising the same, tired legal arguments that have been already rejected twice, without an iota of supporting evidence or legal authority.

Plaintiff does not argue that the arbitrator was not empowered to refuse to award lost profits, thus exceeding his power.  Instead, he argues that the arbitrator based his award on the wrong document (despite the arbitrator's express statement to the contrary in the Clarification of Decision).  However, the Second Circuit has instructed that a federal court "cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law.  On the contrary, the award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached."  *Wallace*, 378 F.3d at 190 (internal quotations omitted); *Tucker v. Am. Bldg. Maint.*, 451 F. Supp. 2d 591, 597 (S.D.N.Y. 2006).  Plaintiff offers no legal authority whatsoever to evade this well-settled legal principle.  Most troubling, he does not even acknowledge any of the binding Second Circuit

15

precedent that is fatal to his arguments that fall far short of the governing FAA standard for vacatur.

The arbitrator clearly articulated the legal and evidentiary support for the February 17, 2017 Award, stating that "[l]ost profits are excluded as an award per the agreements among the parties," and citing the key factual evidence supporting this conclusion, "See § 11.12 Damages in Ex. 4 (Giacomazzo Distribution Agreement) and Ex. 5 (Piacentini Distribution Agreement)." Upon reviewing Plaintiff's Motion for Reconsideration, the arbitrator again specifically addressed Plaintiff's concerns – "in particular, the interplay between Section 11.12 of the Claimant's Distribution Agreement, Ex. 5 and Ex. 6, an amendment to the Agreement, dated June 24, 2013." Ex. B, at 1. Upon reviewing Plaintiff's argument for lost profits briefed for the *fourth* time in the Motion for Reconsideration, the arbitrator advised Plaintiff that the decision "was not just based on Section 11.12 of the 9/20/04 Distribution Agreement. The latter Amendment, Ex. 6, was considered also, along with all the evidence presented." *Id.* at 2. Thus, even if Plaintiff disagrees with the decision, the arbitrator had more than a "colorable" justification for his decision.

Courts in the Second Circuit have used this rationale to specifically deny that an arbitration award may be vacated for mistakes, incorrect analysis, or arbitrary rulings. *See Guerrero v. FJC Sec. Servs. Inc.*, No. 12-cv-5763, 2013 WL 5273795, at *6 (S.D.N.Y. Sept. 18, 2013) ("There is no indication that the arbitrator relied upon or was given false evidence by Gomez. In any case, even if the arbitrator had mistakenly relied on false facts provided by Gomez, that would not be a ground upon which the arbitration award should be vacated."); *First Interregional Equity Corp. v. Haughton*, 842 F. Supp. 105, 111-12 (S.D.N.Y. 1994) ("The question of whether arbitration awards can be rejected under an arbitrary and capricious standard

was directly considered by this Court in *Refino v. Feuer Trans., Inc.* The Court therein found that an arbitration award issued pursuant to the FAA could not be vacated because of inadequate reasoning or even arbitrary determinations." (citation omitted)); *Refino v. Feuer Transp., Inc.*, 480 F. Supp. 562, 565 (S.D.N.Y. 1979), *aff'd*, 633 F.2d 205 (2d Cir. 1980) ("An award can be vacated only under one of the grounds specified in section 10 of the Arbitration Act, 9 U.S.C. §10.  These grounds do not include mistakes of fact, errors of law, inadequate reasoning or even arbitrary determinations." (internal citation omitted)).

In sum, Plaintiff has not even come close to satisfying the Second Circuit's strict standard for vacating an arbitral award.  The arbitrator clearly relied on the evidentiary record presented to him and interpreted the Distribution Agreement and Amendment accordingly.  Despite multiple briefing opportunities, Plaintiff failed to rebut this evidence or offer any legal authority for why he is entitled to lost profits, other than his conclusory assertions.  Plaintiff does not argue that the arbitrator was somehow misled by false evidence, corruption, fraud, or any other "undue means" provided for in 9 U.S.C. §10.  Plaintiff ignores this standard by failing to cite a single authority as to why his Motion to Vacate is cognizable.

Plaintiff has not raised any meaningful legal argument or cited any legal authority supporting his motion.  Instead, he recycles the same twice-rejected argument from his previous four attempts at briefing this issue.  Plaintiff's motion thus falls woefully short of the Second Circuit's standard for vacating an arbitral award and the Court should instead confirm the award.

### C.     Pursuant to Section 9 of the Federal Arbitration Act, the Court should confirm the arbitration award.

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("Arbitration Act"), the Court should confirm the arbitration award entered on February 17, 2017 and affirmed by the arbitrator in the March 3, 2017 Clarification of Decision.

The arbitration decision already expressly resolved all of the issues that Plaintiff has now put before the Court.  The Award expressly rejected Plaintiff's claim to the distribution rights to the BCC.  Instead, the arbitrator found that there was a mutual mistake and so since Mr. Balzi had never purchased such right from BFBD, he lacked the authority to convey such rights to Plaintiff.  Furthermore, the Award definitively excluded lost profits as damages per the express language of the Distribution Agreement between the parties.  In the Clarification of Decision, the arbitrator emphasized that the preclusion of lost profits was in no way altered by the Amendment, which served solely to add an additional provision regarding dispute resolution procedures.  It did not in any way *increase* the availability of damages under the terms of the Distribution Agreement.  Pursuant to the Arbitration Act, BFBD hereby seeks confirmation of the Award and judgment entered accordingly.

The Federal Arbitration Act authorizes a party who has prevailed in arbitration to apply to the court to confirm the arbitration award.  Specifically, Section 9 provides in pertinent part:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration . . .  then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C.A. § 9.  Where a party applies to a district court for an order confirming an arbitration award, courts in this jurisdiction grant such an award unless the other party has sufficiently demonstrated appropriate grounds to vacate or modify the award.  *Hayden v. Cisco Sys., Inc.*, No. 12-00464, 2014 WL 4364900, at *9 (D. Conn. Sept. 2, 2014) ("The role of a district court in reviewing an arbitral award is 'narrowly limited,' and 'arbitration panel determinations are

generally accorded great deference under the FAA" so where a party applies to have a district court confirm the award, ""the court must grant such an order unless the award is vacated, modified, or corrected" pursuant to 9 U.S.C. § 9); *Phillips v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:05-1959, 2006 WL 3746692, at *2 (D. Conn. Dec. 15, 2006) (confirming the arbitration award and dismissing the plaintiff's complaint and noting that where a party applies to a court for an order confirming an arbitration award, "arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation").

Here, the February 17, 2017 Award rejecting Plaintiff's claims and request for lost profit damages constitutes a final award resolving all matters and issued submitted for resolution by arbitration between the parties, BFBD and Plaintiff, within the meaning of 9 U.S.C.A. § 9. Therefore, since the arbitration has decided this specific issue twice – first in the Award and again in the Clarification of Decision – the arbitration is now closed and BFBD is entitled to an order confirming the arbitrator's award and the entry of judgment in favor of BFBD and against Plaintiff in accordance with the terms of the Award and Clarification of Decision.

> **D.** **The Court Should Impose Sanctions for BFBD's Attorneys' Fees Pursuant to 28 U.S.C. § 1927 or, Alternatively, Rule 11, for Unreasonable and Vexatious Conduct in Increasing Litigation Fees.**

As a result of Plaintiff's repeated filings concerning the exact same rejected arguments, BFBD petitions this Court to order Plaintiff or his counsel to pay the excessive costs, expenses, and attorneys' fees reasonably incurred as a direct result of unreasonable and vexatious conduct in multiplying the proceedings in this matter.  The Court has the authority to impose sanctions pursuant to 28 U.S.C. § 1927 as a result of unreasonable and vexatious conduct that has increased the cost of litigation, or, alternatively, pursuant to the Court's authority to impose sanctions *sua sponte* under Rule 11(c) for Plaintiff's violation of Rule 11(b), especially since

Plaintiff was notified of BFBD's intent to pursue sanctions if Plaintiff continued to re-litigate the same issues after the arbitrator's Clarification of Decision.

Courts may award sanctions and attorneys' fees pursuant to 28 U.S.C. § 1927 when a party's counsel has engaged in unreasonable or vexatious conduct that increases the cost of litigation, making the award of attorneys' fees appropriate.  *See Pentagen Techs. Int'l Ltd. v. United States*, 63 F. App'x 548, 549 (2d Cir. 2003) (affirming the district court's award of attorneys' fees pursuant to 28 U.S.C. § 1927 where the plaintiff had initiated a "torrent" of litigation on the same issue, unsuccessfully arguing that the court had not yet considered certain evidence when "such evidence ha[d] already been considered and found insufficient," which the court found to be "bizarre and intolerable," and sanctions were appropriate); *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 115 (2d Cir. 2000) (affirming award of sanctions and providing that "a court may impose sanctions on an attorney who 'so multiplies the proceedings in any case unreasonably or vexatiously,' . . . constituting or akin to bad faith . . . [and] when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay").

Courts may impose Section 1927 sanctions for "resubmitting a motion that had previously been denied; bringing a motion based on 'facts' the opposite of which were previously found by the court; making several insupportable bias recusal motions and repeated motions to reargue; continually engag[ing] in obfuscation of the issues, hyperbolism and groundless presumptions' in addition to insinuating that the court was biased; and waiting until the eve of trial before making a jury demand."  *Id.* at 969 (awarding sanctions where the defendant's motion was completely without merit and since the motion was brought without legal or factual justification, the court was driven to conclude that it was brought for an improper

purpose, such as delay or harassment, thus establishing sufficient bad faith to award sanctions) (citations and internal quotation marks omitted).   A court may infer bad faith from the clear lack of merit of the attorney's claims.  *Banus v. Citigroup Glob. Markets, Inc.,* 757 F. Supp. 2d 394, 399 (S.D.N.Y. 2010).

Here, 28 U.S.C. § 1927 sanctions are clearly appropriate.  Given Plaintiff's counsel's history of unsuccessful briefs based on the exact same argument at issue here, Plaintiff's counsel is fully aware that all of the evidence upon which he relies has already been considered by the Court and found to be insufficient.  First, in the Clarification of Decision, the arbitrator expressly acknowledged consideration of the evidence upon which Plaintiff now rests his Motion to Vacate.  Second, Plaintiff's Motion to Vacate does not introduce a shred of new evidence or any legal authority upon which he could genuinely believe that a different conclusion could be reached.  Instead, Plaintiff's counsel defiantly repackages his previous briefs – a practice expressly prohibited by the *Hudson Motors* court's illustration of practices that violate 28 U.S.C. § 1927.

From a procedural standpoint, the counsel subjected to sanctions must receive both notice and an opportunity to be heard.  "The notice requirement imposes an obligation to inform the subject of the sanctions of '(1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense.'"  *Id.* at 400.   To satisfy the opportunity-to-be-heard requirement, the court does not require a full evidentiary hearing – "being afforded the opportunity to respond by brief or oral argument may be sufficient."  *Id.*

Here, Plaintiff has had more than a sufficient opportunity to be heard.  This is his *fifth* opportunity to brief this claim, in addition to presenting his arguments at the arbitration hearing.

Additionally, given the history of litigating this particular issue, BFBD stated in its objection to Plaintiff's Motion for Reconsideration that if it were compelled to continue to oppose Plaintiff's arguments and "incur fees in briefing the issues presented by the Motion once again, it reserves all rights to request sanctions against Mr. Piacentini and/or his counsel." Ex. Q. Despite that clear warning, Plaintiff's counsel has proceeded to repurpose his already-rejected arguments into yet another motion. Given the clear decision by the arbitrator – reinforced through the Clarification of Decision – Plaintiff's counsel is keenly aware that his arguments have no legal or evidentiary merit, and instead brings this motion in bad faith. Accordingly, the Court should impose sanctions pursuant to 28 U.S.C. § 1927 upon Plaintiff's counsel to reimburse BFBD for the cost of defending itself against such a frivolous motion.

Alternatively, under the circumstances described above, the Court properly could consider an award under Federal Rule 11 of some or all of BFBD's fees and costs incurred in defending this action. BFBD notified Plaintiff of its intention to pursue sanctions in BFBD's objection to Plaintiff's Motion to Reconsider: "If BFBD is compelled to submit a formal response to the Motion and thus incur fees in briefing the issues presented by the Motion once again, it reserves all rights to request sanctions against Mr. Piacentini and/or his counsel." Ex. Q. The Court also has the authority to *sua sponte* conclude that Plaintiff's and/or Plaintiff's counsel's conduct violated Rule 11(b) and impose sanctions accordingly. *See* Fed. R. Civ. P. 11(c)(3) ("On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)."). Indeed, courts in this circuit have found Rule 11 violations under similar circumstances before. *See, e.g., Revellino & Byczek, LLP v. Port Auth. of N.Y. & New Jersey (PANYNJ)*, No. 16-980, 2017 WL 1016841, at *2 (2d Cir. Mar. 15, 2017) (affirming the district court's decision to impose sanctions *sua sponte*

pursuant to Rule 11(c)(3) without providing for a 21-day "safe harbor" period where the court found that counsel had violated Rule 11(b) by presenting a complaint without reasonable basis that the factual contentions therein had evidentiary support); *United States v. Gershon*, No. 3:15-CV-01354, 2016 WL 7115930, at *5 (D. Conn. Dec. 6, 2016) (applying Rule 11(c)(3)  to determine that the court on its own could move for sanctions and order the offending party to show cause as to why his conduct did not violate Rule 11(b) where the defendant's motion failed to cite any authority for why his motion was cognizable despite statutory authority to the contrary,  leading the court to "infer that Defendant's motion to dismiss was for the 'improper purpose' of causing 'unnecessary delay,' a separate violation of Rule 11(b)(1)"); *Amityville Mobile Home Civic Ass'n v. Town of Babylon*, No. 14-CV-2369, 2015 WL 1412655, at *8 (E.D.N.Y. Mar. 26, 2015) (finding Federal Rule 11 violation and awarding reasonable attorneys' fees and costs where the plaintiffs had repeatedly filed motions concerning the same matter, and the court additionally cautioned that the court would issue an injunction if the plaintiffs continued to pursue the matter).  Thus, based on the conduct described in detail above, the Court could on its own initiative conclude that Plaintiff and/or Plaintiff's counsel violated Rule 11(b) and award sanctions.

## III.   CONCLUSION

It is clear that Plaintiff has already had a full and fair opportunity to argue his claim concerning lost profits.  This argument has been rejected *twice* and this is Plaintiff's *fifth* written submission concerning his failed theory.  The Court should reject Plaintiff's attempt to re-litigate this stale argument and impose sanctions of attorneys' fees for abuse of the judicial system and vexatious increase of the cost of litigation.  Accordingly, BFBD respectfully requests that this Court reject Plaintiff's motion to vacate the arbitrator's award, grant BFBD's cross-petition to confirm the arbitrator's award, and impose sanctions pursuant to 28 U.S.C. § 1927 or,

alternatively, Federal Rule of Civil Procedure 11(c), in the form of BFBD's attorneys' fees incurred in responding to Plaintiff's petition.

Dated:  April 10, 2017

<div style="margin-left: 40%;">

*s/ Michael J. Puma*
Michael J. Puma
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103
P: 215.963.5305
michael.puma@morganlewis.com

*Counsel for BFBD*

</div>