# EXHIBIT A

## AMERICAN ARBITRATION ASSOCIATION

In the Matter of the Arbitration between:

Joseph Piacentini,
    Claimant

v.

Bimbo Foods Bakeries Distribution, LLC,
    Respondent

Bimbo Bakeries USA,
    Claimant

v.

Joseph Piacentini,
    Respondent

And

Edward Giacomazzo,
    Respondent

Case # 01-16-0000-9482

## AWARD OF ARBITRATOR

I, Hon. John R. Downey, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement dated May 24, 2013, entered into between the above parties, or otherwise consented to by participation in this arbitration, having been duly sworn, and having duly heard the allegations, including claim, counterclaim and cross claim, and proofs of the parties, and an evidentiary hearing having been conducted on January 12 and 13, 2017, and kept open for the submission of post hearing briefs received by January 30, 2017, do hereby, AWARD, as follows:

### Bridgeport Correctional Center (BCC)

Joseph Piacentini entered into a bakery product distribution agreement with Bimbo Food Bakeries Distribution, LLC (Bimbo). The original agreement was dated 9/20/2004 and was between Mr. Piacentini and George Weston Bakeries Distribution, Inc. (Weston). Bimbo acquired the Weston rights and amended the original agreement by a contract dated 7/11/2011

1

(see Ex. 9A). Piacentini had distribution rights to a defined geographic area. The Bridgeport Correctional Center (BCC) was and is located in that designated area. However, Bimbo had previously conveyed the specific right to service BCC to John Balzi by an agreement dated 11/15/2010. John Balzi then sold his rights to distribute Bimbo products in the geographic area in question to Piacentini on that same day, 11/15/2010. Ed Giacomazzo also purchased rights to distribute on 11/15/2010 from Bimbo. A dispute has arisen over who has the rights to service BCC, as well as other "stop" (a "stop" is a customer) rights.

I find that, after a review of the key documents and hearing from Michael Mastropietro, Bimbo's Division Manager, that the right to service BCC was sold to Giacomazzo and that a mistake was made by Bimbo and Piacentini in not specifically identifying BCC as an excluded "stop" or customer in its paperwork (Schedule A) referencing the sale of distribution rights to Piacentini. In other words, when Balzi sold his territory to Piacentini a year later, Balzi had no rights to the prison and, therefore, could not convey them.

While Piacentini now claims he assumed BCC was his customer, his past conduct does not comport with such a right. It is noted that for almost 4 years Piacentini never asserted such a right. Piacentini also testified that he did not believe he had the rights to BCC until 2015. This contradicted his interrogatory response.

The evidence before me compels me to conclude, as a matter of law and as a matter of equity or fairness, that the Schedule A be reformed to reflect Bimbo's, Giacomazzo's and Balzi's agreement reflecting that BCC be the "stop" for Giacomazzo.

### The New Colony Diner, C-Town, Dollar General – Stops

Other territory issues currently complicate the Bimbo-Giacomazzo-Piacentini relationships. The stops concerned are The New Colony Diner, C-Town and Dollar General.

Piacentini should take over sales to The New Colony Diner stop. There is no dispute that the Diner is in Piacentini's territory.

Piacentini should take over the sales of Arnold product as to C-Town. There is no dispute that C-Town is Piacentini's Arnold sales area.

Giacomazzo should take over sales to the Dollar General, except for the rights to sell Arnold products, which rights belong to Piacentini. That Dollar General is part of Giacomazzo's sales area cannot be disputed.

### Award of Damages

Lost profits are excluded as an award per the agreements among the parties. See § 11.12 Damages in Ex. 4 (Giacomazzo Distribution Agreement) and Ex. 5 (Piacentini Distribution Agreement). No award of lost profits for Giacomazzo or Piacentini is made.

2

But, because Giacomazzo and Piacentini had to seek arbitration as a way to correct the mistakes primarily due to Bimbo's conduct and encouragements to go into another distributer's territory, I order that Bimbo pay or reimburse all arbitrator fees and administrative costs of filing with AAA, if any, borne by the respective parties. The Administrative fees and expenses of the AAA totaling $4,650.00 are to be borne $4,650.00 by Bimbo Bakeries USA. The Compensation and expenses of the Arbitrator totaling $18,497.67 are to be borne $18,497.67 by Bimbo Bakeries USA. Therefore, Bimbo Bakeries USA has to pay Joseph Piacentini an amount of $750.00 and has to pay Edward Giacomazzo an amount of $6,549.99. Otherwise, all attorney fees and costs incurred by the parties themselves shall be borne by themselves.

This AWARD is in full resolution of all claims submitted to this Arbitration. All claims not expressly granted herein, are hereby denied.

Date: 2/17/17

Hon. John R. Downey, Arbitrator

cc:  All Counsel
     K. Jalkut, AAA

MD1781

3