# EXHIBIT C

## GEORGE WESTON BAKERIES DISTRIBUTION, INC.

## DISTRIBUTION AGREEMENT

**T**HIS **AGREEMENT** made effective **September 20, 2004** by and between GEORGE WESTON BAKERIES DISTRIBUTION, INC., a business corporation with its principal office at 55 Paradise Lane, Bay Shore, New York, (herein referred to as "GWBD") and **JOSEPH   PIACENTINI**, residing at **876 HUNTINGTON ROAD, STRATFORD, CONNECTICUT 06614,** (herein referred to as "DISTRIBUTOR").

### W I T N E S S E T H :

**WHEREAS**, GWBD has heretofore developed and or acquired the exclusive distribution rights, to distribute and sell various fresh baked products throughout much of the United States; and

**WHEREAS,** DISTRIBUTOR has the ability and experience necessary to sell and distribute Products successfully within a specific geographic area; and

**WHEREAS,** DISTRIBUTOR has purchased from DISTRIBUTOR'S predecessor distributor o r G WBD t he D istribution R ights i n t he S ales A rea h ereinafter described; and

**WHEREAS,** the parties desire to enter into a written agreement describing and setting forth the terms and conditions under which they will do business with each other;

NOW THEREFORE, in consideration of the premises, covenants and conditions set forth herein, and for other good and valuable consideration given and received, the parties mutually agree as follows:

## ARTICLE 1
## DEFINITIONS

§1.1 **SALES AREA:** Shall mean that geographic area within which DISTRIBUTOR owns the Distribution Rights, as more specifically described in Schedule A attached hereto and made a part hereof.

§1.2 **OUTLETS:** Shall mean those purchasers of products as specifically defined and described in Schedule B attached hereto and made a part hereof.

§1.3 **PRODUCTS:** Shall mean all those bakery products as specifically defined and described in Schedule B attached hereto and made a part hereof.

§1.4 **DISTRIBUTION RIGHTS:** Shall mean the sole right to sell and distribute Products to Outlets in the Sales Area, which right has been purchased by DISTRIBUTOR from GWBD or from DISTRIBUTOR'S predecessor, as evidenced by a Bill of Sale executed heretofore.

§1.5 **CHAIN:** Shall mean a person or business entity that operates more than one Outlet and makes decisions regarding the purchase of Products for its Outlets at a central office.

**§1.6** **FORCE MAJEURE:** Shall mean an Act of God, war, fire, explosion, riot, looting, civil commotion, failure of machinery or plant, restrictions by a Government or any competent authority, strikes or lock-outs at either party's premises or in any related trade or business or any other similar circumstances of whatsoever kind beyond the control of the party affected which affects either party's performance of its obligations under this Agreement.

**ARTICLE 2**
**RELATIONSHIP**

**§2.1** **EXTENT AND DURATION:** GWBD hereby recognizes DISTRIBUTOR'S ownership of the Distribution Rights, which ownership will continue until the Distribution Rights are sold or transferred as provided herein.

**§2.2** **TERMINATION OF THIS AGREEMENT:** The parties agree that the Distribution Rights can be exercised only pursuant to the terms of this Agreement and that any termination of this Agreement requires DISTRIBUTOR or GWBD, for the account of DISTRIBUTOR, to sell such Distribution Rights as provided herein.

**§2.3** **INDEPENDENT CONTRACTORS:** The parties intend to create an independent contractor relationship and it is of the essence of this Agreement that DISTRIBUTOR is an independent contractor for all purposes and DISTRIBUTOR shall only identify himself as such in all third party dealings. Any contrary final determination by any board, tribunal or court of competent jurisdiction shall require the amendment of this Agreement in any way necessary to establish an independent contractor relationship. As an independent contractor, DISTRIBUTOR has the right to operate the business as DISTRIBUTOR chooses, and shall bear all risks and costs of operating such business. DISTRIBUTOR has no authority to retain any person on behalf of GWBD. It is expressly understood that DISTRIBUTOR has no claim, or right under any circumstances, to any benefits or other compensation

currently paid by GWBD to employees, or hereafter declared by GWBD for the benefit of employees.  No fiduciary relationship exists between the parties.

§2.4 **NOTICE:** DISTRIBUTOR agrees to have painted in a conspicuous manner on any delivery vehicle owned or leased by DISTRIBUTOR to carry out the terms hereof: "Owned and operated by JOSEPH PIACENTINI, an Independent Contractor."

## ARTICLE 3
## SALE OF PRODUCTS

§3.1 **TITLE:** All Products will be sold to DISTRIBUTOR absolutely, and title to and risk of loss of the Products shall pass to DISTRIBUTOR upon delivery of the Products in accordance with §3.2 below.

§3.2 **DELIVERY:** Except as otherwise provided herein, GWBD agrees to sell and deliver to DISTRIBUTOR or to arrange for such sale and delivery by affiliates, and DISTRIBUTOR agrees to buy and accept, at such location as GWBD may from time to time reasonably designate or approve, sufficient quantities of the Products to adequately and properly supply the Outlets in the Sales Area.  GWBD agrees to use commercially reasonable efforts to fill DISTRIBUTOR'S orders in a reasonable and timely fashion.  In case of strike, shortage of materials, equipment breakdown or other cause, GWBD reserves the right to fill orders on such reasonable basis as circumstances then permit.  GWBD and DISTRIBUTOR recognize that cuts and pluses and, on rare occasions, cancellations of deliveries, in whole or in part, are an unavoidable aspect of fresh baked goods production.  In the event of such pluses, DISTRIBUTOR agrees to use DISTRIBUTOR'S reasonable efforts to effect the sale of the additional product.  GWBD further agrees to accept and give full credit for any damaged or off code Product which is not damaged or off code by reason of DISTRIBUTOR'S negligence, and which has been promptly returned in accordance with GWBD'S then current stale and damage return policy.  GWBD reserves the

right to make reasonable amendments to such stale and damage return policy from time to time.

§3.3 **TERMS:** Products will be sold to DISTRIBUTOR on terms and prices established by GWBD from time to time.

§3.4 **SETTLEMENT OF ACCOUNT:** On or before Friday of each week, DISTRIBUTOR will remit to GWBD or its affiliates the purchase price of all Products delivered to DISTRIBUTOR during the preceding week, less credit for any off code or damaged Products which have been returned in accordance with §3.2 above.

§3.5 **PURCHASE OF RECEIVABLES:** In cases where the DISTRIBUTOR sells and distributes Products to Chains or Outlets, which have been approved by GWBD for credit, GWBD or its affiliates shall, at the request and for the convenience of DISTRIBUTOR, purchase properly filled out and executed charge slips and/or invoices from the DISTRIBUTOR at their face value, and credit DISTRIBUTOR'S account therefore.   DISTRIBUTOR shall promptly remit all such necessary documentation to GWBD and sign such assignments and agreements as may be necessary to transfer to GWBD all receivables and accounts.  If a Chain elects to pay for purchases of product on a scan, rather than delivery basis, GWBD or its affiliates shall purchase the receivable from DISTRIBUTOR at the full face value of the scan report.

§3.6 **PROMOTION PARTICIPATION PROGRAM:** In cases where DISTRIBUTOR wishes to sell Products to Outlets at prices which are less than those reflected on GWBD's then current Suggested Price List, and DISTRIBUTOR wishes to have GWBD participate and GWBD or its affiliates agree to participate in such promotion or discount price, GWBD will contribute pursuant to GWBD's Promotion Participation Policy as amended from time to time.

§3.7 **SECURITY INTEREST:** To secure the payment of any indebtedness or liability of DISTRIBUTOR to GWBD or its affiliates now or hereafter arising pursuant to this Agreement or otherwise, DISTRIBUTOR hereby grants and conveys to GWBD a continuing and general security interest in the Distribution Rights, all other assets used in connection with the operation of the Distribution Rights, all rights hereunder and all Products and receivables of the DISTRIBUTOR, and grants to GWBD the rights of a secured party. DISTRIBUTOR agrees to execute the GWBD Security Agreement and financing statement(s) to evidence such security interest. Any default under the GWBD Security Agreement by DISTRIBUTOR shall be a default under this Agreement.

§3.8 **DEFAULT:** Nothing herein shall be deemed to require GWBD to fill an order of DISTRIBUTOR during any time when DISTRIBUTOR is in default of any payment or other obligation to GWBD or its affiliates.

## ARTICLE 4
## DISTRIBUTOR'S OBLIGATIONS

§4.1 **RESULTS:** In order to maximize its purchases from GWBD, DISTRIBUTOR agrees to develop and maximize sales of Products to Outlets within the Sales Area by maintaining an adequate and fresh supply of Products in all Outlets; rotating Products to promote their sale before they become stale or off code; promptly removing all stale or off code Products; cooperating with GWBD or its affiliates in its marketing programs, maintaining a computer assisted record-keeping system compatible with the system maintained by GWBD now or in the future; and providing service on a basis consistent with good industry practice to all Outlets requesting service in the Sales Area. DISTRIBUTOR is not required to service any Outlet that has proven consistently to be unprofitable, provided that where a Chain requires that such an Outlet be served as a condition for serving its other outlets, the

profitability of any Outlet which is part of that Chain shall be judged on the basis of the profitability of the Chain as a whole.  Nothing herein shall be deemed to prohibit DISTRIBUTOR'S right to carry and distribute merchandise for other companies or otherwise engage in any other business activity unless and except to the extent that such other merchandise is competitive with or could contaminate the Products or such other business activity is inconsistent or interferes with the obligations of the DISTRIBUTOR hereunder.

§4.2 **COMPLIANCE:**  DISTRIBUTOR shall operate the business in compliance with all federal, state and local laws, rules and regulations.

§4.3 **PERSONAL SERVICES NOT REQUIRED:** Nothing herein shall be deemed to contemplate or require that DISTRIBUTOR perform any of the services called for by this Agreement personally, and DISTRIBUTOR shall be free to engage such persons as DISTRIBUTOR deems appropriate to assist in discharging DISTRIBUTOR'S responsibilities hereunder. DISTRIBUTOR shall have the exclusive right to select, fix the compensation of, discharge and otherwise to manage, supervise and control all persons engaged by DISTRIBUTOR and shall, with respect to all such persons, perform all obligations and discharge all liabilities imposed upon DISTRIBUTOR under all government laws, rules or regulations ("Laws"), whether such Laws relate to labor, employment standards, worker's compensation, unemployment insurance, pay equity or any other governmental requirement; file all required tax information, reports and pay and/or withhold all applicable payroll-related taxes with respect to any employees of DISTRIBUTOR. DISTRIBUTOR in all events shall be and remain responsible for insuring that all persons engaged by DISTRIBUTOR comply fully with all the terms and conditions of this Agreement.  Any breach of this Agreement by any person engaged by DISTRIBUTOR shall be deemed to be a breach by DISTRIBUTOR.

§4.4 **NON-COMPLIANCE**: Failure to carry out the terms, conditions and obligations listed in this Article or elsewhere in this Agreement shall be considered a breach of this Agreement and shall entitle GWBD to terminate this Agreement as more specifically set forth in Article 8 hereof, except that DISTRIBUTOR shall not be responsible for failures caused by Force Majeure, provided however, that an event of Force Majeure shall not excuse DISTRIBUTOR from any obligations to pay for Products pursuant to Article 3.

### ARTICLE 5
### GWBD' OBLIGATIONS

§5.1  **DELIVERY AND COOPERATION**: GWBD shall use  commercially reasonable efforts to deliver to DISTRIBUTOR sufficient quantities of the Products to supply Outlets requesting service in the Sales Area, to assist in the development of new Outlets, to pursue the development of new Products, to preserve and develop the quality and marketability of the Products and to assist and cooperate with DISTRIBUTOR'S sales efforts, except that GWBD shall not be responsible for failures caused by Force Majeure.

§5.2 **SALES TO CHAINS**: In order to enable DISTRIBUTOR to pursue business opportunities with Chains, which may require standard terms for all DISTRIBUTORS, DISTRIBUTOR hereby designates GWBD and its affiliates and GWBD hereby agrees to act, as DISTRIBUTOR'S agent.  GWBD shall use commercially reasonable efforts to obtain from Chains authorization to sell Products in the Chains and information regarding the prices and terms at which the Chains would be willing to purchase Products for their Outlets, and GWBD will communicate the information concerning such authorizations, prices and terms to DISTRIBUTOR.   This appointment of GWBD and its affiliates as DISTRIBUTOR'S agent shall not prevent DISTRIBUTOR from having the right to

negotiate prices and terms directly with a Chain and selling Products to the Chain at whatever prices and terms DISTRIBUTOR can negotiate.    In addition, DISTRIBUTOR shall have the option to revoke the designation of GWBD as DISTRIBUTOR'S agent at any time on thirty (30) days notice.  Nothing herein shall require GWBD to pay slotting allowances or other similar fees or charges imposed by the Chains.

### ARTICLE 6
### TRANSFER OF RIGHTS

§6.1   **CONDITIONS OF ASSIGNABILITY:** The Distribution Rights are owned by the DISTRIBUTOR and may be sold or otherwise transferred in whole or in part by DISTRIBUTOR, or in the event of DISTRIBUTOR'S death, by a legal representative of DISTRIBUTOR'S estate, provided that any such sale or transfer shall be subject to: (a) the prior written approval of GWBD, which approval will not be unreasonably withheld; and (b) a right of first refusal on the part of GWBD at the same terms and conditions offered to DISTRIBUTOR or DISTRIBUTOR'S estate (the "Offer") by a bona fide purchaser or transferee (the "Offeror").  The right of approval and right of refusal referred to herein shall expire unless DISTRIBUTOR is notified by GWBD that it does not approve the sale or transfer or that it wishes to exercise its right of first refusal by notice given within ten (10) days after the last to occur of the following:

(i) receipt by GWBD of written notice of intent to sell or transfer to a named Offeror on terms and conditions fully set forth in such notice, and

(ii) receipt by GWBD of the Offeror's current financial statements and such additional information concerning the Offeror's financial condition, credit, driving records and other matters reasonably appropriate to GWBD in its determination.  If the contemplated sale or transfer is not a bona fide transfer for

value, the price to be paid by GWBD shall be the market value of the Distribution Rights at the time of receipt of such notice of intent.

If GWBD right of approval and right of first refusal expire as provided above, DISTRIBUTOR may consummate the transfer to the Offeror on the terms of the Offer; provided (i) such action or inaction will not eliminate or in any way affect GWBD right of approval or its right of first refusal on future transfers of the Distribution R ights; a nd ( ii) i f n o t ransfer t o t he O fferor i s c onsummated on the terms of the Offer within 90 days after the expiration of GWBD right of approval or right of first refusal, all of the provisions of this Section 6.1 shall reapply.

**§6.2   DEATH:** In the event of the death of DISTRIBUTOR, GWBD may require the DISTRIBUTOR'S estate to sell the Distribution Rights.  If the estate does not sell such Distribution Rights within a period of ninety (90) days from the date on which GWBD r equires i t t o do so, GWBD shall have the right to sell the same, as the estate's agent, to a qualified purchaser.

**§6.3   PROCEEDS:** Any sale shall be for the account of DISTRIBUTOR or DISTRIBUTOR'S e state, a nd the proceeds of the sale, after deducting therefrom any monies owed by DISTRIBUTOR to GWBD, all reasonable costs and expenses in connection with the sale (including without limitation the cost of removing any off code or damaged Products in DISTRIBUTOR'S Sales Area) and the satisfaction of any outstanding debts, liens, security interests, legal fees and similar expenses, shall be turned over to DISTRIBUTOR or DISTRIBUTOR'S estate.

**§6.4   TRANSFER DOCUMENTS:** In the event of a sale or transfer by or for the account of DISTRIBUTOR or DISTRIBUTOR'S estate as described in this Article 6, the DISTRIBUTOR or the estate shall execute an appropriate bill of sale to the purchaser, and a general release terminating, canceling and surrendering DISTRIBUTOR'S rights under this Agreement and releasing any and all claims against GWBD and its affiliates and its officers, directors, shareholders, employees,

successors and assigns arising under or out of this Agreement, and GWBD agrees to enter into a new Distribution Agreement with the purchaser in the form of agreement then being used by GWBD.

## ARTICLE 7
## SERVICE FAILURES AND CHANGES

**§7.1**   **PARTIAL ABANDONMENT:**  If DISTRIBUTOR fails to service any Outlet in the Sales Area and such failure is not remedied within three (3) days after receipt of written notice thereof, then, in addition to any other lawful rights and remedies GWBD may have, GWBD may deem such Outlet abandoned and may make other arrangements for the service thereof.  DISTRIBUTOR shall not be entitled to any proceeds derived from such service or proceeds in connection with the sale of Distribution Rights to such Outlet

**§7.2**   **CHANGE IN DELIVERY METHOD:**  In the event any Outlet makes an independent determination to accept delivery of the Products by any method other than store door delivery, and so informs GWBD or DISTRIBUTOR, the informed party shall  promptly communicate to the other the service requirements and terms under which the Outlet now desires service, and provided those new service requirements continue to call for delivery in the Sales Area, DISTRIBUTOR shall have the first right to effect such alternative service.  DISTRIBUTOR shall elect to provide such alternative services by (i) providing written notice thereof to GWBD within five (5) days after receiving notice of the alternative service requirements, and (ii) commencing such alternative service promptly thereafter (or on such schedule as may be acceptable to the Outlet).  If DISTRIBUTOR elects not to effect such alternate service or if the Outlet's new requirements include delivery outside the Sales Area, GWBD shall thereafter be permitted to make other arrangements to serve such Outlet, which service shall not be deemed to violate DISTRIBUTOR'S

rights hereunder and DISTRIBUTOR shall not be entitled to any proceeds derived from such service.   However, DISTRIBUTOR shall continue to own those Distribution Rights defined herein to the Outlet within the Sales Area.

§7.3   **TEMPORARY SERVICE BY GWBD:**  If DISTRIBUTOR or DISTRIBUTOR'S estate, as the case may be, is not able to or does not perform the obligations under this Agreement, DISTRIBUTOR or DISTRIBUTOR'S estate shall make other adequate provision for such performance at the expense of DISTRIBUTOR or DISTRIBUTOR'S estate.  If no such provision is made, GWBD, within the limits of its ability to do so, may make arrangements to have these obligations performed for the account of DISTRIBUTOR, deducting from the revenues generated the reasonable expenses of such performance and delivering the balance, if any, to DISTRIBUTOR.  Such temporary performance shall not relieve DISTRIBUTOR of any of the obligations imposed by this Agreement, constitute an assumption by GWBD of any obligations of DISTRIBUTOR, nor act to cure any default which may exist on the part of DISTRIBUTOR.

## ARTICLE 8
## TERMINATION

§8.1   **BREACH:** Except as set forth in this Article or upon the sale or transfer of all of the DISTRIBUTOR'S Distribution Rights, this Agreement shall not be terminated or canceled provided DISTRIBUTOR carries out the terms hereof.  In the event of DISTRIBUTOR'S breach of any obligations or covenants under this or any other Agreement with GWBD, GWBD may terminate the Agreement as set forth below.

§8.2   **NON-CURABLE BREACH:** If the breach by DISTRIBUTOR involves criminal activity or fraud, threatens public health or safety, or threatens to do significant harm to GWBD, its affiliates, it operations, its trademarks or commercial reputation,

GWBD may terminate this Agreement immediately upon written notice and DISTRIBUTOR shall have no right to cure.

§8.3 **CURABLE BREACH:**   In the event of breach by DISTRIBUTOR other than under §8.2, GWBD shall give DISTRIBUTOR three (3) business days written notice within which DISTRIBUTOR may cure the breach.  If DISTRIBUTOR fails to cure such breach within said three (3) day period, GWBD may thereafter terminate this Agreement and DISTRIBUTOR shall have no further right to cure; provided, further, that the parties agree that repeated violations constitute a chronic breach and threaten significant harm to GWBD, i ts o perations, i ts t rademarks o r commercial reputation, and in such event GWBD shall be entitled to terminate this Agreement pursuant to §8.2 and DISTRIBUTOR shall have no further right to cure.

§8.4 **ACTIONS FOLLOWING TERMINATION:** Termination under §8.2 or §8.3 above shall entitle GWBD to operate the business for the account of the DISTRIBUTOR, deducting from the revenues generated the reasonable expenses of such performance and delivering the balance, if any, to DISTRIBUTOR. Termination shall require DISTRIBUTOR to sell the Distribution Rights, and in the event that DISTRIBUTOR has not consummated a sale to a qualified purchaser within 90 days of the date of termination, GWBD shall be authorized to sell DISTRIBUTOR'S Distribution Rights to  a purchaser at the best price which can be obtained after proper notice and advertisement.  Said sale shall be for the account of the DISTRIBUTOR, and the provisions of §6.3 and §6.4 hereof shall apply.

## ARTICLE 9
## TRANSFER FEE

**§9.1** **PAYMENT OF FEE:** In the event of a sale or transfer by DISTRIBUTOR or by GWBD for the account of DISTRIBUTOR of all or any portion of DISTRIBUTOR'S Distribution Rights, including a sale to GWBD, DISTRIBUTOR shall pay a Transfer Fee to GWBD in an amount equal to TWO PER CENT (2%) of the sales price, in full consideration for the administrative activities undertaken by GWBD in connection therewith.

## ARTICLE 10
## TRADEMARKS, TRADE NAMES
## AND COMPUTER SOFTWARE USAGE

**§10.1** **PERMISSION FOR USE:** G WBD h ereby g rants t o D ISTRIBUTOR a l imited, non-exclusive right in the Sales Area only to use the trademarks set forth on Schedule B and any other trademarks, trade names or graphical designations on the packaging of the Products supplied by GWBD to DISTRIBUTOR hereunder (the "Marks"), solely to identify said products and to identify DISTRIBUTOR as a distributor of said products. DISTRIBUTOR acknowledges that the Marks are the exclusive property of GWBD or its affiliates, or if applicable, the licensor thereof, as the case may be (the "Owners"), and DISTRIBUTOR agrees that it will not dispute or contest the exclusive right, title and interest of the Owners in, or the validity of, any of the Marks. DISTRIBUTOR acknowledges that it does not have, and will not acquire, any right, title or interest in any of the Marks or in the good will now or hereafter attaching thereto, and that all such goodwill shall inure solely to the benefit of the Owner of each Mark. DISTRIBUTOR agrees that it shall not use any of the Marks in any corporate title or trading name of any corporation, company, partnership, association, business or sole proprietorship of the

DISTRIBUTOR, or with which the DISTRIBUTOR may become affiliated or related t hrough o wnership o r o therwise.  DISTRIBUTOR agrees that it shall not tamper with any of the Marks or other written matter or graphical designations on the packaging of the products supplied by GWBD to DISTRIBUTOR hereunder and shall not otherwise modify or change the packaging thereof in any way.  Any marketing or promotional material proposed to be used by DISTRIBUTOR which references the Marks (other than marketing or promotional material supplied by GWBD or any of the Owners) shall be submitted to GWBD for approval, and said material shall not be used without the prior written consent of GWBD.

§10.2 **SOFTWARE ACCOUNTING SYSTEM:** DISTRIBUTOR is hereby authorized to use any proprietary software system and program developed by GWBD or its affiliates for route sales accounting as the same may be amended from time to time, but shall acquire no other interest or right in the software and shall not attempt to modify, decompile, disassemble or otherwise reverse engineer the software.

§10.3 **RETURN UPON TERMINATION:** Upon the termination of this Agreement or of DISTRIBUTOR'S right to use any of the Marks, DISTRIBUTOR shall immediately cease its use of the Marks (or the terminated Marks, as the case may be), and shall not thereafter use any trademarks, trade names or other designations associated with or confusingly similar to said Marks, or make any representations, directly or indirectly, that it continues to distribute products bearing said Marks.

# ARTICLE 11
## MISCELLANEOUS

**§11.1 NOTICES:** Any notice required or permitted under this Agreement shall be deemed properly given when personally received or one (1) day after delivery to an overnight courier service for first day delivery, or five (5) days after deposit in the mails, return receipt requested, first class postage pre-paid. All notices shall be addressed to DISTRIBUTOR at the address stated above and to GWBD, at the address indicated in Schedule B attached hereto. Either party may designate another address for receipt of notices by written notice duly given in accordance with this §11.1.

**§11.2 SURVIVAL; GWBD AFFILIATES:** This Agreement shall be binding upon heirs, personal representatives, successors or assigns of the parties hereto. The parties recognize and agree that any obligations of GWBD hereunder may from time to time be undertaken by affiliates of GWBD but GWBD shall remain responsible therefore.

**§11.3 INCORPORATION BY REFERENCE:** This Agreement is subject to and affected by the terms and conditions of a certain Bill of Sale executed by the parties immediately prior hereto and said Bill of Sale and the Schedules hereto, are incorporated herein by reference as though fully set forth in this Agreement.

**§11.4 ENTIRE AGREEMENT:** This Agreement, together with the Bill of Sale referred to in §11.3 above and any other agreements executed between the parties on even date herewith, sets forth the entire agreement between the parties and supersedes all prior agreements, discussions, negotiations, understandings, representations, conditions, warranties and covenants between them with respect to this subject matter. Unless set forth herein, neither party shall be liable for any representation

made to the other.  This Agreement may be amended or modified only by a writing signed by both parties.

§11.5 **INDEMNIFICATION:** Each party hereby agrees to defend, indemnify and hold the other harmless against a third party as to any costs, charges or claims including, without limitation, reasonable attorneys' fees and costs of settlement which may arise out of such party or its employees' or independent contractors' direct or indirect failure to perform any obligation and/or discharge any liability arising hereunder.

§11.6 **DESIGNATION AS AGENT:** DISTRIBUTOR hereby irrevocably grants GWBD a limited power of attorney with full and complete authority to transfer DISTRIBUTOR'S Distribution Rights, or perform any of DISTRIBUTOR'S obligations hereunder for DISTRIBUTOR'S account in accordance with the terms of this Agreement.  This appointment shall survive the death or disability of DIS-TRIBUTOR or the termination of this Agreement.

§11.7 **ACQUISITIONS:** Notwithstanding anything to the contrary contained herein, this Agreement shall not apply to any products or product lines obtained by GWBD, or any corporation related thereto, through acquisition after the date hereof.

§11.8 **CONTROLLING LAW:** The validity, interpretation and performance of this Agreement shall be controlled by and construed in accordance with the laws of the State of New York.

§11.9 **NECESSARY MODIFICATION:** In the event any provision of this Agreement is found to be invalid, contrary to, or in conflict with any applicable present or future law or regulation in a final ruling by any court, agency or tribunal possessing competent jurisdiction, this Agreement shall be deemed modified to the extent necessary to conform with any such ruling, law or regulation.  The remainder of this Agreement shall not be affected thereby and shall remain in full force and effect.

§11.10 **COUNTERPARTS:**   This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute one and the same instrument.

§11.11 **TIME CALCULATION:**   In computing the number of days for purposes of this Agreement, all days shall be counted, including Saturdays, Sundays, and holidays; provided, however, that if the final day of any time period falls on a Sunday, or holiday, then the final day shall be deemed to be the next day which is not a Sunday or holiday.

§11.12 **DAMAGES:**   **Notwithstanding anything to the contrary contained in this Agreement, in no event shall either party be liable to the other for any consequential, incidental, indirect or special damages, including lost profits and punitive damages.**

§11.13 **NO JURY TRIAL:** **The parties hereby knowingly, voluntarily and intentionally waive the right either of them may have to a trial by jury in respect of any litigation based hereon or arising out of this Agreement or any acts, omissions, transactions or course of dealing hereunder.**

**IN WITNESS WHEREOF**, GWBD and DISTRIBUTOR have caused this Agreement to be duly executed as of the day and year first above written.

**GEORGE WESTON BAKERIES**
**DISTRIBUTION INC. (GWBD)**

By: _____

SHELLY W. SELIGMAN,
SECRETARY

_____
**DISTRIBUTOR**

# SCHEDULE "B"

## CONTRACTUAL DEFINITIONS:

BRANCH: STRATFORD                    SALES AREA #: 1450

The following definitions shall apply for the purposes of this Distribution Agreement:

**OUTLETS:** As referred to in §1.2, Outlets shall mean all retail stores restaurants and institutional accounts which purchase Products by store door delivery. Outlets shall not be deemed to include street vendors or any Outlets or parts thereof, including concessions and vending machines therein, serviced by methods other than store door delivery, or bakery thrift stores established or operated by, or contracted with GWBD or its affiliates for the primary purpose of selling damaged, stale, off code products, although such bakery thrift stores may also sell any products, fresh or otherwise, which GWBD or its affiliates, in their sole discretion, deem appropriate to support that purpose.

**PRODUCTS:**  As referred to in §1.3, Products shall mean all fresh baked breads, rolls, Italian bread shells, cereal bars, muffins, cakes, pies, bread stuffings, packaged croutons and similar fresh baked products intended to be sold as fresh, and sold under the names and trademarks:

**FREIHOFERS            BOBOLI    ARNOLD**


Products shall not include products distributed by GWBD under any names or trademark other than those listed above, products intended to be sold as frozen or refrigerated, or damaged, stale, or off code products or product produced to supplement bakery thrift store inventory to facilitate a thrift recovery system.

**ADDRESS FOR NOTICE:** As referred to in §11.1, notices to GWBD shall be addressed to:

**George Weston Bakeries Distribution Inc.**
**10 Hamilton Avenue**
**Greenwich, CT 06830**

# SCHEDULE "A"

## SALES AREA DESCRIPTION

BRANCH: Stratford CT                                            SALES AREA #: 1450

Unless otherwise indicated, only the inside (side facing the interior of the territory) of all the city, town or State lines, rivers, or other natural boundaries or border streets and highways is included in the Sales Area. The location of any Outlet shall be determined by its street address. There are no additions or exceptions unless noted.

- **The Following for the Arnold Brand Only**

| Beginning at a Point where the | | | Long Island Sound Shore Line | intersects with the | Bridgeport/Fairfield TL |
|---|---|---|---|---|---|
| Proceed | N | on the | Bridgeport/Fairfield TL | to intersection of | Easton/Trumbull TL |
| Then | NW | on the | Easton/Trumbull TL | to intersection of | Newtown/Monroe TL |
| Then | NE | on the | Newtown/Monroe TL | to intersection of | Shelton/Trumbull TL |
| Then | SW | on the | Shelton/Trumbull TL | to intersection of | Stratford/Trumbull TL |
| Then | SW | on the | Stratford/Trumbull TL | to intersection of | Rte 8/Broadbridge Ave. |
| Then | SW | on the | Broadbridge Ave. | to intersection of | Barnum Ave. (Both sides) |
| Then | SW | on the | Barnum Ave. | to intersection of | Boston Ave. (Both Sides) |
| Then | W | on the | Boston Ave. | to intersection of | E. Main St. (Both Sides) |
| Then | SW | on the | E. Main St. | to intersection of | Route 95 |
| Then | SW | on the | Route 95 | to intersection of | Pequannock River |
| Then | SW | on the | Pequannock River | to intersection of | Long Island Sound Shore Line |
| Then | W | on the | Long Island Sound Shore Line | to intersection of | **Point and Place of Beginning** |

Additions:

This sales area includes the following areas or accounts:
- **The Following for the Freihofer Brand Only**

| Beginning at a Point where the | | | Route 25 | intersects with the | Route 15 (Merritt Parkway) |
|---|---|---|---|---|---|
| Proceed | E | on the | Route 15 (Merritt Parkway) | to intersection of | Route 8 |
| Then | SW | on the | Route 8 | to intersection of | Route 111 |
| Then | SW | on the | Route 111 | to intersection of | Route 111 (Huntington Tpke) |
| Then | SW | on the | Route 111 (Huntington Tpke) | to intersection of | E. Main St. (Both Sides) |
| Then | N | on the | E. Main St. | to intersection of | Old Town Rd |
| Then | W | on the | Old Town Rd | to intersection of | Sylvan Ave. |
| Then | S | on the | Sylvan Ave. | to intersection of | Edwards St. |
| Then | W | on the | Edwards St. | to intersection of | Reservoir Ave. |
| Then | S | on the | Reservoir Ave. | to intersection of | Saunders Ave. |
| Then | W | on the | Saunders Ave. | to intersection of | Chopsey hill Rd. |
| Then | N | on the | Chopsey hill Rd. | to intersection of | Exeter St. |
| Then | W | on the | Exeter St. | to intersection of | Up St. |
| Then | N | on the | Up St. | to intersection of | Broadway Ave. |
| Then | W | on the | Broadway Ave. | to intersection of | Ridgewood Pl. |
| Then | W | on the | Ridgewood Pl. | to intersection of | Fern St. |
| Then | W | on the | Fern St. | to intersection of | Wayne St. |
| Then | N | on the | Wayne St. | to intersection of | Queen St. |
| Then | W | on the | Queen St. | to intersection of | Peet St. |
| Then | N | on the | Peet St. | to intersection of | Marconi Ave. |
| Then | E | on the | Marconi Ave. | to intersection of | Primrose Ave. |
| Then | N | on the | Primrose Ave. | to intersection of | Vincellta St. |
| Then | W | on the | Vincellta St. | to intersection of | Madison Ave. |
| Then | N | on the | Madison Ave. | to intersection of | Geduldig Ave. |
| Then | W | on the | Geduldig Ave. | to intersection of | Park Ave. |

| Then | N | on the | Park Ave. | to intersection of | Route 15 (Merritt Parkway) |
| Then | E | on the | Route 15 (Merritt Parkway) | to intersection of | Reservoir Ave. |
| Then | N | on the | Reservoir Ave. | to intersection of | White Plains Rd. (Both Sides) |
| Then | NW | on the | White Plains Rd. | to intersection of | Daniels Farm Rd. (Both Sides) |
| Then | N | on the | Daniels Farm Rd. | to intersection of | Route 25 |
| Then | S | on the | Route 25 | to intersection of | **Point and Place of Beginning** |

Exceptions:
This sales area excludes the following areas or accounts:
- o **The Following for Arnold Brand Only;**
- Any Outlet currently at the address of 1700 Park Ave, Bridgeport, CT 06604 (currently doing business as A&P Food mart NE 405)
- Any Outlet currently at the address of 500 Sylvan Ave. Bridgeport, CT 06606 (currently doing business as Shaw's 212)
- Any Outlet currently at the address of 2600 Madison Ave. Bridgeport, CT 06606 (currently doing business as Stop N Shop 668)
  - o **The Following for Freihofer Brand Only;**
- Any Outlet currently at the address of 5065 Main St Trumbull, CT 06611 (Currently doing Business as Arby's 5287)


I have read the Sales Area Description and it is correct:

JOE PIACENTINI_____
NAME

_9-20-04_____
DATE