# EXHIBIT O

# Morgan Lewis

**Michael J. Puma**
Partner
+1.215.963.5305
michael.puma@morganlewis.com

Re:     *Piacentini v. Giacomazzo v. Bimbo Bakeries USA*, Case No. 01-16-0000-9482

Dear Judge Downey:

I am writing on behalf of Bimbo Foods Bakeries Distribution, LLC ("BBFD") to address the remedies that BFBD believes are appropriate in the above-referenced matter.[1]

The July 2011 Schedule A suggesting that the rights to the Bridgeport Correctional Center ("BCC") belong to Piacentini was the result of a mutual mistake in the transaction conveying rights from BFBD to Balzi in 2010. By relying on that 2010 Schedule A, which should have listed the BCC as an "Exception," the same mistake carried over to mutual mistakes in both (i) the Balzi to Piacentini transaction and (ii) the Distribution Agreement Amendment between Piacentini and BFBD.[2] The proper remedy is to confirm the parties' intentions by reforming the IOs' Schedules A (listing the BCC as an exception on the Piacentini schedule and an addition on the Giacomazzo schedule), as the evidence shows: (1) the BFBD to Giacomazzo transaction attached a "stop list" including the BCC and specifically calculated the purchase price based on the value of the BCC rights, while the BFBD to Balzi and then Balzi to Piacentini

---

[1] As explained in prior briefing and confirmed by testimony at the hearing, the Distribution Agreements preclude an award of lost profits (which is how Piacentini and Giacomazzo have styled their claims for monetary damages). At most, if BFBD's defenses all failed, an IO could recover only the present value of a customer's distribution rights, which was calculated and introduced for each relevant customer at the hearing.

[2] To the extent Piacentini did believe in July 2011 that he owned the rights to the BCC, which he did not, then his claim to the BCC is alternatively barred by a unilateral mistake known to Piacentini that he inequitably failed to disclose and/or by the doctrine of waiver given the years before he asserted his rights.

**Morgan, Lewis & Bockius** LLP

1701 Market Street
Philadelphia, PA  19103-2921         ☏ +1.215.963.5000
United States                        📠 +1.215.963.5001

Judge Downey
January 27, 2017
Page 2

transactions excluded the BCC from the stop list and price calculations, clearly confirming the parties' intentions; (2) Balzi testified that he absolutely understood that he never purchased or sold the BCC rights; (3) Giacomazzo testified that he absolutely understood that he did purchase the BCC rights; (4) Piacentini clearly was aware of the BCC from having sold to it for years earlier and even was aware that the BCC was on the border of the Balzi (then his) sales area from his surveying of that area; (5) Piacentini had regular opportunities to ask BFBD whether the BCC (admittedly a valuable account) was an active account, but he did not because he clearly knew he did not purchase it; and (6) Piacentini was not credible in testifying he always believed he had the rights to the BCC, as confirmed by his interrogatory response (used to impeach him at the hearing) specifically confirming he did not believe he had the BCC "rights" until 2015.

The appropriate remedy for the New Colony Diner is for Piacentini to take over sales to the customer given that there is no dispute that it is (and was intended to be) in his sales area. The allegation that a BFBD representative suggested to Giacomazzo that he could solicit the Diner cannot alter his distribution rights or those of Piacentini, as confirmed by the integration clauses in their Distribution Agreements reviewed at the hearing.

The appropriate remedy for the C-Town is for Piacentini to take over sales of Arnold product given that there is no dispute that the C-Town is (and was intended to be) in his Arnold sales area. The allegation that Giacomazzo renewed the C-Town generally as a customer does not change the fact the he has rights only to products other than Arnold (which he retains).

The appropriate remedy for the Dollar General is for Giacomazzo to take over sales to the customer (other than rights for Arnold, which the parties agree belong to Piacentini) given that

2

Judge Downey
January 27, 2017
Page 3

there is no dispute that the Dollar General is (and was intended to be) in his sales area. The allegation that a BFBD representative suggested to Piacentini that he could solicit the Dollar General cannot alter his distribution rights or those of Giacomazzo, as confirmed by the integration clauses in their Distribution Agreements reviewed at the hearing.

With respect to any award of fees/costs, Giacomazzo's counsel confirmed at the conclusion of the arbitration that he is not seeking fees/costs. Piacentini's counsel was not clear at that time whether and how fees/costs had been demanded. They were not. The demand for arbitration filed by Piacentini makes no such a demand in its narrative or in the cover sheet that specifically includes a box for attorneys' fees that was not checked. Piacentini's damages calculations in response to BFBD's interrogatories similarly made no demand for fees/costs. Nor did Piacentini's pre-hearing submission make that demand. Finally, the remedies provision of the parties' arbitration agreement confirms that an award of fees/costs is the exception, not the rule, by stating that in IO bears his own fees/costs unless an arbitrator orders otherwise. The remedies provision further confirms that Piacentini may recover in arbitration the remedies under the Distribution Agreement that he could recover in court, subject to the terms of the Agreement. There would be no basis for an award of fees in court given that Piacentini's common law claim for breach of contract does not give rise to a statutory or other right to recover fees. BFBD timely and specifically demanded fees/costs and seeks that relief only if Piacentini persists in his untimely demand for that relief and receives fees/costs despite the above discussion.

Sincerely,
*Michael J. Puma*

3