# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

JOSEPH PIACENTINI,

    Plaintiff,

    v.

BIMBO FOODS BAKERIES
DISTRIBUTION, LLC,
BIMBO BAKERIES USA, INC., and
EDWARD GIACOMAZZO,

    Defendants,

No. 17-cv-00386 (VAB)

## RULING AND ORDER ON PETITION TO VACATE ARBITRATOR'S AWARD, CROSS-PETITION TO CONFIRM ARBITRATOR'S AWARD, AND MOTION FOR SANCTIONS

Joseph Piacentini ("Petitioner") has petitioned the Court to vacate an arbitrator's award in favor of Edward Giacomazzo ("Individual Respondent") and Bimbo Foods Bakeries Distribution, LLC, and Bimbo Bakeries USA, Inc. ("BFBD" or "Respondent") (collectively "Respondents").

Respondents have cross-petitioned the Court to confirm the arbitration award.

Respondents have also moved the Court to impose sanctions on Mr. Piacentini under 28 U.S.C. § 1927, or, alternatively, under Federal Rule of Civil Procedure 11.

For the following reasons, the petition to vacate the arbitration award is **DISMISSED**. The cross-petition to affirm the arbitration award is **DISMISSED**.

The motion for sanctions is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. FACTUAL ALLEGATIONS

#### 1. The Distribution Agreement

On September 20, 2004, Mr. Piacentini, an independent contractor, purchased from BFBD—which was then called George Western Bakeries Distribution, Inc. ('GWBD'), Resp't Cross-Pet. at 2—exclusive distribution rights of BFBD food products within a defined geographical area, Pet'r's Pet. ¶ 5; *see generally* Distribution Agreement ("Agreement"), Pet'r's Pet., Ex. A, ECF No. 1-1 at 2.

The relevant portion of the Agreement states:

> § 11.12 <u>DAMAGES:</u> Notwithstanding anything to the contrary contained in this Agreement, in no event shall either party be liable to the other for any consequential, incidental, indirect or special damages, including lost profits and punitive damages.

Agreement § 11.12.

On November 15, 2010, BFBD sold the exclusive distribution rights to the Bridgeport Correctional Center (BCC) to independent contractor, Edward Giacomazzo, who then began to sell BFBD products to the BCC and has allegedly done so ever since. Resp't's Cross-Pet. at 2. On November 15, 2010, BFBD sold the distribution rights to the area surrounding BCC—but not the BCC—to independent contractor, John Balzi. *Id.* The sale area inadvertently failed to exclude the BCC as an exception. *Id.* at 3. All parties to the transaction understood Mr. Balzi did not own the distribution rights to the BCC, which were sold to Mr. Giacomazzo the same day, and thus Mr. Balzi never sold or even attempted to sell products to the BCC. *Id.*

On July 14, 2011, by way of a Bill of Sale, Mr. Balzi sold his distribution rights to Mr. Piacentini, Pet'r's Pet., Ex. B, ECF No. 1-1 at 24, and, by amendment to the Agreement, the parties agreed to enlarge the geographical areas in which Mr. Piacentini had the exclusive right

to distribute BFBD's baked goods, Pet'r's Pet., Ex. C, ECF No. 1-1 at 31. Due to the inadvertent omission of the BCC exception in the original Balzi transaction, the same omission carried over to this transaction. Resp't Cross-Pet. at 3. Thus, the BCC distribution rights were not included in the purchase price, as expected, since Mr. Balzi's distribution rights did not in fact include the BCC; instead, Mr. Giacomazzo owned the BCC rights and had been selling BFBD food products consistent with these rights. *Id.*

### 2. The Arbitration Amendment

Mr. Piacentini participated in class-action settlement of a federal lawsuit, captioned: *Alhquist v. Bimbo Foods Bakeries Association, Inc.*, No. 3:12-cv-12727 (SRU). Pet'r's Pet. at 1, Ex. C, ECF No. 1-1 at 36. As part of the settlement, settlement beneficiaries, including Mr. Piacentini, agreed to amend their respective distribution agreements to include a provision for mandatory dispute resolution by arbitration. *Id.*

In relevant part, the arbitration agreement provides:

> § 1.6 Remedies: Subject to the parties' right to appeal or seek vacatur under applicable law, the parties acknowledge and agree that the decision of the arbitrator will be final and binding on the parties and that the arbitrator is authorized to award any party the full remedies that would be available to such party if the Covered Claim had been filed in a court of competent jurisdiction, including actual and reasonable attorneys' fees and costs, if any.

Dispute Resolution Agreement § 1.10, Pet'r's Pet. Ex. C, ECF No. 1-1 at 64.[1]

### 3. Arbitration

When the BCC omission came to light, BFBD revealed it to Mr. Piacentini, sought his cooperation with issuing corrected documents, and as consideration for such cooperation, BFBD

---

[1] The Court notes that the exhibit is labeled "C" even though Mr. Piacentini already provided an Exhibit C.

3

offered a nominal payment to Mr. Piacentini. *Id.* Mr. Piacentini accepted payment, Ahlquist Check, Pet'r's Pet. Ex. B, ECF No. 1-1 at 58,[2] and filed a lawsuit in Connecticut Superior Court, Puma Ltr. at 1, Pet'r's Pet. Ex. C, ECF No. 1-1 at 36, seeking lost profits that would have accrued in Mr. Piacentini's favor but for the BCC omission. Resp't's Cross-Pet. *Id.* at 3–4. When BFBD sought arbitration or else damages under the liquidated damages clause of the amended Agreement, Mr. Piacentini dismissed the state-court action. *Id.* at 4.

On March 21, 2016, Mr. Piacentini filed a demand for arbitration asserting that he, not Mr. Giacomazzo, was the true owner of the BCC distribution rights and that Mr. Piacentini was owed payment for lost profits from the BCC location for the previous five years. *Id.* at 4.

The American Arbitration Association selected the Honorable John R. Downey, former Connecticut Superior Court Judge, to preside over the dispute. Pet'r's Pet. ¶ 9. The parties then engaged in motion practice. On September 26, 2016, BFBD filed a letter brief in support of its motion to dismiss, or, in the alternative, for summary judgment, Resp't's Cross-Pet. at 4, to which Mr. Piacentini objected, and BFBD replied. *Id.* at 4–5. On January 4, 2017, BFBD and Mr. Piacentini filed individual pre-hearing submissions. *Id.* at 5.

On January 12, 2017, and continued the following day, former-Judge Downey took testimony and documentary evidence from the parties. Pet'r's Pet. ¶ 10. After the hearing, Mr. Piacentini and BFBD submitted post-hearing briefs. *Id.* at 5–6. On February 17, 2017, former-Judge Downey issued a written decision. Resp't's Cross-Pet. at 6. He found that Mr. Balzi sold to Mr. Giacomazzo the right to service the BBC, and that, by mutual mistake, the BBC "stop" was included as part of the transaction. *Id.* Therefore, according to former-Judge Downey, Mr.

---

[2] Again, Mr. Piancentini has labeled this exhibit "B" notwithstanding already submitting an Exhibit B.

Balzi could not convey rights that he did not properly hold. *Id.* The mutual mistake with respect to the BCC was remedied by reformation to reflect the parties' intention, and former-Judge Downey awarded Mr. Piacentini distribution rights to several locations that had been serviced by Mr. Giacomazzo. *Id.* at 7; Pet'r's Pet. at 3. Downey further found that under the terms of the Agreement, lost profits were foreclosed as a remedy. Resp't's Cross-Pet. at 7. Accordingly, BFBD and Mr. Piacentini could not recover lost profits. *Id.* Former-Judge Downey also ordered BFBD to pay all arbitration fees and administrative costs and left all attorneys' fees to the respective parties. *Id.*

Mr. Piacentini filed a motion for reconsideration, which BFBD opposed by e-mail. *Id.* In BFBD's e-mail, which former-Judge Downey construed as BFBD's formal opposition, BFBD noted that there "is no AAA rule that permits such a Motion under the circumstances" and stated: "If BFBD is compelled to submit a formal response to this motion and thus incur fees in briefing the issue . . . once again, it reserves all rights to request sanctions against Mr. Piacentini and/or his counsel." Puma E-mail, Resp't's Cross-Pet., Ex. Q, ECF No. 10-18.

Former-Judge Downey issued a Clarification of Decision on March 3, 2017. Resp't's Cross-Pet., Ex B., ECF No. 10-3. In it, he explained that he had referenced both Section 11.12 of the Agreement—which provides: "in no event shall either party be liable to the other for any consequential, incidental, indirect or special damages, including lost profits and punitive damages"—and Section 1.10 of the Dispute Resolution Agreement—which states that the "arbitrator is authorized to award any party the full remedies that would be available to such party if the Covered Claim had been filed in a court of competent jurisdiction, . . . if any," when making his final decision. *Id.* at 1. Although clarifying his reasoning, former-Judge Downey declined to revisit the final award. *Id.* at 2.

## B. Procedural Background

Under 28 U.S.C. § 1332, Joseph Piacentini filed a § 10 petition to vacate the arbitrator's award. ECF No. 1. In the petition, Mr. Piacentini represents that he and Mr. Giacomazzo are domiciled in Connecticut, while BFBD maintains a principal place of business in Pennsylvania. Pet'r's Pet. ¶¶ 1–3.

One April 10, 2017, BFBD cross-petitioned the Court to affirm the arbitrator's award and moved for the Court to impose sanctions on Mr. Piacentini, ECF No. 10, in which Mr. Giacomazzo joined, ECF No. 12.

On February 26, 2018, the Court heard oral argument. ECF No. 26.

## II. STANDARD OF REVIEW

The Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"), "provides the exclusive, and limited, authority for federal court review of an arbitral award." *Arrowood Indem. Co. v. Trustmark Ins. Co.*, 938 F. Supp. 2d 267, 272 (D. Conn. 2013), *aff'd*, 560 Fed. App'x 75 (2d Cir. 2014) (citing *Hall St. Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008)).

> The FAA provides a streamlined process for a party seeking a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it. Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected. But arbitration awards are not self-enforcing. Rather, they must be given force and effect by being converted to judicial orders by courts.

*R & Q Reinsurance Co. v. Utica Mut. Ins. Co.*, 18 F. Supp. 3d 389, 392 (S.D.N.Y. 2014) (internal quotation marks omitted). Section 10 of the FAA allows a district court to vacate an arbitration award only in narrow circumstances, including, in relevant part, "where the arbitrators

exceeded their powers." 9 U.S.C. § 10(a)(4). "[T]he United States court in and for the district wherein [an arbitration] award was made may make an order vacating the award upon the application of any party to the arbitration." 9 U.S.C. § 10(a).

"As for jurisdiction over controversies touching arbitration, however, the Act is something of an anomaly in the realm of federal legislation: It bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute." *Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) (internal quotation marks and brackets omitted) (quoting *Mattel*, 552 U.S. at 581–582). The FAA "brings some issues into federal court in a particular case that may not be brought in through other procedural mechanisms, it does so by enlarging the range of remedies available in the federal courts, not extending their jurisdiction." *Id.* at 79 (Roberts, C.J., concurring in part and dissenting in part) (internal quotation marks and brackets omitted) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)). The necessary "independent jurisdictional basis is generally either federal question or diversity jurisdiction." *Hermès of Paris, Inc. v. Swain*, 867 F.3d 321, 323 n.1 (2d Cir. 2017) (citing *Northport Health Servs. of Ark., LLC v. Rutherford*, 605 F.3d 483, 486 (8th Cir. 2010)).

## III. DISCUSSION

### A. Subject Matter Jurisdiction

Before turning to the merits, the Court must determine Mr. Piacentini's independent jurisdictional basis for the Court to hear this dispute. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (internal citation omitted) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented. Subject-matter jurisdiction can never be waived or forfeited.").

7

### 1. Diversity

Here, Mr. Piacentini alleges diversity of citizenship as a basis for the Court's subject-matter jurisdiction. *See* Pet'r's Pet. ¶ 4. To invoke diversity jurisdiction, Mr. Piacentini "must show complete diversity—that is, that [he] does not share citizenship with any defendant." *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 445 (2d Cir. 1995) (internal quotation marks omitted) (collecting cases). He has failed to do so.

Mr. Piacentini's petition names himself, a Connecticut resident, and Mr. Giacomazzo, who is also a Connecticut resident, and BFBD whose principal place of business is Pennsylvania. *Id.* ¶¶ 1–3. The petition asserts that the $75,000 jurisdictional threshold has been satisfied.[3] *See* 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs . . . ."). Mr. Piacentini also maintains that he is diverse from Respondents. *See Hertz Corp. v. Friend*, 559 U.S. 77, 80–81 (2010) (holding that for purposes of § 1332, "'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities . . . often metaphorically called . . . the corporation's 'nerve center.'"). Mr. Piacentini and Mr. Giacomazzo, however, are not diverse. *See Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322–23 (2d Cir. 2001) ("It is well established that "[t]he party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete.").

---

[3] During oral argument, counsel to BFBD represented that the amount in dispute is approximately $16,000, which, if true, would not suffice to confer upon this Court subject matter jurisdiction under diversity jurisdiction. In any event, the Court need not reach the issue because there is not complete diversity.

Mr. Piacentini has failed to demonstrate that all adverse parties in this suit are "completely diverse with regard to citizenship." *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 930 (2d Cir. 1998). Federal diversity jurisdiction therefore may not serve as Mr. Piacentini's independent jurisdictional basis for the Court to hear this case.

### 2. Federal Question

Without diversity among the parties, Mr. Piacentini must have jurisdiction arising from a question of federal law. Even if, however, Mr. Piacentini were to invoke federal question jurisdiction under 28 U.S.C. § 1331 as an independent basis for this Court to take jurisdiction over the matter, which he has not, Mr. Piacentini cannot rely on § 1331 to carry his petition.

Section 1331 vests in federal district courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." "Under the longstanding well-pleaded complaint rule, however, a suit 'arises under' federal law 'only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law].'" *Vaden*, 556 U.S. at 59–60 (quoting *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 152 (1908)).

The Second Circuit instructs that, for purposes of a § 10 petition, "the 'ordinary' jurisdictional inquiry under § 1331 looks to the underlying substantive dispute with respect to all remedies under the Act." *Doscher v. Sea Port Grp. Sec., LLC*, 832 F.3d 372, 384 (2d Cir. 2016). "Implicit in this holding is the requirement that the legal rule that the arbitration panel allegedly manifestly disregarded is in fact a rule of *federal* law." *Id.* at 375. A court therefore must look to the "substantive conflict between the parties to determine the dispute giving rise to § 1331 jurisdiction," *id.* at 382 (internal quotation marks omitted) (citing *Vaden*, 556 U.S. at 63), "not the face of the petition." *Id.* at 383.

9

This view is consistent with the purpose of the FAA: "[Congress] provided [the] remedies of vacatur and modification in §§ 10 and 11, albeit on exclusive and narrow grounds sounding in basic fairness and due process—a fact which, the Supreme Court has said, suggests Congress intended to "substantiat[e] a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway." *Id.* at 386 (quoting *Mattel*, 552 U.S. at 588). Accordingly, "a federal district court faced with a § 10 petition may 'look through' the petition to the underlying dispute, applying to it the ordinary rules of federal-question jurisdiction." *Id.* at 388.

"A *complaint* purporting to rest on state law . . . can be recharacterized as one 'arising under' federal law if the law governing the complaint is exclusively federal." *Vaden*, 556 U.S. at 61. When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003). Under the "complete preemption doctrine, a plaintiff's state cause of action may be recast as a federal claim for relief." *Vaden*, 556 U.S. at 61 (internal quotation marks and brackets omitted). By contrast, a state-law-based counterclaim, "even if similarly susceptible to recharacterization, would remain nonremovable [under 28 U.S.C. § 1441]. . . . [C]ounterclaims, even if they rely exclusively on federal substantive law, do not qualify a case for federal-court cognizance." *Id.* 61–62.

Mr. Piacentini fails to provide an independent basis for federal jurisdiction. This case involves a garden variety contract dispute. Mr. Piacentini's § 10 petition alleges that former-Judge Downey erred in interpreting two provisions of the Agreement, that, according to Mr. Piacentini, are at odds, but Mr. Piacentini does not claim that the panel acted in "manifest disregard of *federal* law." *Giusti v. Morgan Stanley Smith Barney, LLC*, 581 Fed. App'x 34, 35

(2d Cir. 2014) (finding that petition § 10 petition "merely alleges procedural and evidentiary errors," but does not claim that the panel acted in "manifest disregard of *federal* law"); *see also* Pet'r's Supporting Br. at 5, ECF No. 24 ("The arbitrator . . . in not applying the proper damage provision of the arbitration agreement failed to issue [a] mutual, final or definite award upon the subject matter and the award was a manifest disregard of the law."). Mr. Piacentini has "therefore failed to establish that his right to relief necessarily depends on resolution of a substantial question of federal law." *Id.* at 35 (internal quotation marks omitted); *see also Anderson*, 539 U.S. at 8 (noting, *e.g.*, that, for purposes of § 1331 jurisdiction, the Supreme Court has found complete preemption with respect to causes of action under the Labor Management Relations Act and the Employee Retirement Income Security Act of 1974).

Accordingly, the Court must dismiss the Mr. Piacentini's petition. *See Durant, Nichols, Houston, Hodgson & Cortese–Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) ("If subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action *sua sponte*.").

Under the same reasoning, the Court will dismiss Respondents' cross-petitions. *See Vaden*, 556 U.S. at 61–62 (observing that a state-law-based counterclaim, "even if similarly susceptible to recharacterization, would remain nonremovable [under 28 U.S.C. § 1441]. . . . [E]ven if they rely exclusively on federal substantive law, [recharacterization does] not qualify a case for federal-court cognizance."); *Doscher*, 832 F.3d at 385 ("The identification of district courts by geography in §§ 7 and 9–11 performs functions more analogous to venue or personal jurisdiction than to subject matter jurisdiction.").

11

B. **Sanctions**

1. **28 U.S.C. § 1927**

Arguing that Mr. Piacentini's § 10 petition was vexatious and frivolous, Respondents ask the Court to award it the costs incurred in defending against the petition. Resp't's Cross-Pet. at 20. The Court declines the invitation.

A court may impose on "any attorney or other person . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. An award under § 1927 is proper "when there is a finding of conduct constituting or akin to bad faith." *State St. Bank v. Inversiones Errazuriz*, 374 F.3d 158, 180 (2d Cir. 2004) (internal quotation marks omitted). "The attorney's actions must be 'so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 591 (2d Cir. 2016) (citing *State St. Bank*). "[B]ad faith may be inferred where the action is completely without merit." *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 116 (2d Cir. 2000).

The Court has "wide discretion in deciding when sanctions are appropriate," *Morley v. Ciba–Geigy Corp.*, 66 F.3d 21, 24 (2d Cir. 1995) (quotation marks and citations omitted), and may award costs under § 1927, notwithstanding the Court dismissing the action for want of jurisdiction. *Neroni v. Becker*, 609 Fed. App'x 690, 692 (2d Cir. 2015) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990)).

In *60 E. 80th St. Equities, Inc.*, a debtor appealed the Bankruptcy Court's April 26, 1999, order denying the debtor's motion to vacate the sale.[4] The court, *sua sponte*, awarded sanctions against debtor's counsel under 28 U.S.C. § 1927 for "maintain[ing] this appeal in bad faith for the purpose of multiplying the proceedings in the case unreasonably and vexatiously," and for making "spurious allegations of criminality in his brief against the Bankruptcy Judge and the Trustee." 218 F.3d 109, 113.

Respondents' reliance on *60 E. 80th St. Equities, Inc.*, as a basis for sanctions, however, is misplaced. Unlike in *60 E. 80th St. Equities, Inc.*, here, Mr. Piacentini did not "clearly lack[] standing to challenge the [award]." *Id.* at 115. And Respondents' assertion that Mr. Piacentini acted in bad faith by seeking reconsideration of the arbitration award, fails to account for the fact that even former-Judge Downey, given the opportunity, felt the need to clarify his earlier decision. *See* Clarification of Dec. of Feb. 17, 2017, at 1, Resp't's Cross-Pet., Ex. B., ECF No. 10-3 ("The undersigned concludes that it is more correct to reference both documents Ex. 5 and Ex. 6 in the final decision."); *cf. 60 E. 80th St. Equities, Inc.*, 218 F.3d at 116 ("Both the Bankruptcy Court and the District Court in this case found that there was "no evidence that a surplus is a reasonable possibility in these proceedings . . . nor that the Debtor had any equitable interest whatsoever in the Judgments since the sole owner's fraudulent conduct undermined the value of the Debtor's sole asset and gave rise to the Judgments in the first place.").

Moreover, the Court lacks jurisdiction to pass judgment on the merits, and, other than in an e-mail from BFBD, Mr. Piacentini has not been warned of the alleged frivolity of his claims. *Cf. 60 E. 80th St. Equities, Inc.*, 218 F.3d at 116 ("[N]ot only were the [Debtor's] claims

---

[4] The Bankruptcy Court had dismissed the debtor's motion to vacate the sale of unsatisfied judgments, and held the debtor had no standing to object to the sale. *60 E. 80th St. Equities, Inc.*, 218 F.3d at 113.

13

meritless, but [the Debtor's attorney] was warned of their frivolity by the Bankruptcy Court before he filed the appeal to the District Court."). As a result, the Court does not construe his conduct as vexatious within the meaning of § 1927, and therefore declines to impose sanctions.

### 2. Federal Rule of Civil Procedure 11

Finally, Respondents argue that the Court should impose sanctions under Federal Rule of Civil Procedure 11. Respondents argue that their threat of sanctions while litigating the underlying dispute before former-Judge Downey constitutes notice within the meaning of Rule 11. Resp't's Cross-Pet. at 24; *see also* Puma E-Mail at 1 ("If BFBD is compelled to submit a formal response to this motion and thus incur fees in briefing the issue . . . once again, it reserves all rights to request sanctions against Mr. Piacentini and/or his counsel."). The Court disagrees.

Although the Court lacks jurisdiction to decide the merits of the parties' § 9 and § 10 petitions, the Court "retain[s] the power to determine collateral issues, such as the appropriateness of sanctions." *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 141–42 (2d Cir. 2002) (citing *Willy v. Coastal Corp.*, 503 U.S. 131, 137–39 (1992) (affirming Rule 11 sanctions even though it was later determined that district court lacked subject matter jurisdiction); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) (noting that "the imposition of a Rule 11 sanction is not a judgment on the merits of an action" and that the determination of whether an attorney abused the judicial process and what sanctions might be appropriate was a "collateral issue" that "may be made after the principal suit has been terminated").

Arguments that are presented to "harass, cause unnecessary delay, or needlessly increase the cost of litigation," or whose "claims, defenses, and other legal contentions are [un]warranted by existing law or [are supported by []frivolous argument[s], for extending, modifying, or reversing existing law or for establishing new law, . . . [permit] the [C]ourt [to] impose an

appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(b)–(c).[5]

Importantly, Rule 11 provides, in pertinent part:

> **(1) *In General.*** If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) [governing frivolous claims] has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.
>
> **(2) *Motion for Sanctions.*** A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the [C]ourt if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the [C]ourt may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.
>
> **(3) *On the Court's Initiative.*** On its own, the [C]ourt may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).

Fed. R. Civ. P. 11(c). "These procedural protections are intended to reduce the number of motions for sanctions and to provide opportunities for parties to avoid sanctions altogether." *Perpetual*, 290 F.3d at 141–42 (citing *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1327 (2d Cir. 1995)).

The Court notes that Respondents' motion for Rule 11 sanctions was not "made separately from other motions or requests." Fed. R. Civ. P. 11(c)(1)(A). "Instead, [Respondents'] request for sanctions was included in their memorandum addressing the underlying issues before

---

[5] Although not relevant here, there are other grounds for Rule 11 sanctions, *e.g.*, where factual contentions lack evidentiary support. Fed. R. Civ. P. 11(b)(3)–(4).

the district court. Similarly, [Respondents] did not serve their motion on [Mr. Piacentini] prior to filing it with the court." *Perpetual*, 290 F.3d at 142. Mr. Piacentini therefore was not afforded the "benefits of the twenty-one day 'safe harbor provision' allowing [him] the opportunity to withdraw or correct [his] allegedly frivolous claims," *id.*; Fed. R. Civ. P. 11(c)(2), and sanctions under Rule 11(c)(2) are therefore inappropriate.

While Respondents argue that Mr. Piacentini was duly on notice, Rule 11(c)(2) makes plain that the "motion" must be served under Rule 5, "but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2).

Nevertheless, Respondents ask that the Court impose sanctions, *sua sponte*, under Rule 11(c). While Mr. Piacentini has failed to respond to Respondents' contention, the Court declines to act, *sua sponte*.

A district court can award sanctions, absent a motion from a party. Fed. R. Civ. P. 11(c)(3); *see* Fed. R. Civ. P. 11(c)(1)(B) ("On its own initiative, the court may enter an order describing the specific conduct that appears to violate [Rule 11(b)] and directing an attorney, law firm, or party to show cause why it has not violated [the rule]."). If a court acts *sua sponte* to impose sanctions, "the 21–day safe harbor does not apply and the court may impose sanctions without providing opportunity to withdraw the misstatement." *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013). Here, notice or no notice, the Court may not, under Rule 11, award attorney's fees on its own initiative. *Perpetual*, 290 F.3d 132, 142 n.2 (citing Fed. R. Civ. P. 11(c)(2) (attorney's fees may be awarded on motion only)). The Court therefore will not provide the relief Respondents seek and denies the motion.

## IV. CONCLUSION

For the reasons discussed above, the petition to vacate the arbitration award is **DISMISSED**. The cross-petition to affirm the arbitration award is **DISMISSED**.

Respondents' motion for sanctions is **DENIED**.

The Clerk of the Court is directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 27th day of February, 2018.

    /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE